**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Patrick F. IZZI, d/b/a Pat Izzi Trucking Company, Respondent.**

**No. 6459.**

United States Court of Appeals First Circuit.

May 14, 1968.

Edward E. Wall, Washington, D. C., with whom Marcel Mallet-Prevost, Asst. General Counsel, was on motion, Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Elliott Moore, Atty., N.L.R.B., for petitioner.

Sidney A. Coven, Boston, Mass., for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Respondent, an individual employer, having wrongfully refused to reinstate some fifteen truck drivers, Patrick F. Izzi, 149 N.L.R.B. 1097, enforced, NLRB v. Izzi, 1 Cir., 1965, 343 F.2d 753, failed to agree with the Board on the amount of back pay owed, and an evidentiary hearing was held. The present motion for a supplemental decree raises the propriety of the trial examiner's supplemental findings adopted, with presently immaterial changes, by the Board.

■ The most basic question arises from the fact that over the back-pay period respondent's business would not have afforded full employment for all discriminatees. This fact, but not the exact deficiency of opportunity, appeared from General Counsel's own exhibit. (We shall hereafter refer to General Counsel, and counsel for the General Counsel, simply as Counsel.) The exhibit shows trips worked by the replacement employees during the period, but does not take account of respondent's proven practice of paying employees for a whole week even though a full number of hours was not necessarily worked. Consequently, although it is conceded that every discriminatee would not have worked, but for the discharge, each and

every week, the exhibit does not permit precise calculation of actually paid-for time. Respondent seems to think that enough had been shown to place the burden of going forward on the Board. We quite disagree. It was incumbent upon the respondent to show just what employment in the compensatory sense would not have been available. See NLRB v. Reed & Prince Mfg. Co., 1 Cir., 1942, 130 F.2d 765; NLRB v. Mastro Plastics Corp., 2 Cir., 1965, 354 F.2d 170, 175–177, cert. denied 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682.

■ Having failed to do this, respondent alternatively complains of the fact that the Board, in computing back pay on the assumption that each discriminatee would always have worked a full week, departed from the theory it had espoused in its pleadings. The Board's specifications sought recovery of the "average weekly earnings" of each worker. Respondent says that, in a rough sense, such past averaging would have constituted an adjustment recognizing that full employment for all employees was not available, but that after respondent had thought there was no issue, and after it was too late for him to repair the harm, Counsel shifted his position to claiming full employment.[1] During oral argument we were impressed by this contention. NLRB v. H. E. Fletcher Co., 1 Cir., 1962, 298 F.2d 594, 600. When, however, we came to read the record, we found quite a different picture. Counsel did not shift his position. Respondent knew it from the beginning, and complained of it from the beginning.[2] NLRB v. Puerto Rico Rayon Mills, Inc., 1 Cir., 1961, 293 F.2d 941. He now seeks to parlay a matter of averaging the discriminatee's "weekly earnings" by including in the average weeks that were not worked. Yet his objection made at the opening—"The first major issue—" was that Counsel did not propose this. The evidence introduced by Counsel's first witness directly confirmed respondent's fears. For him now to say that Counsel changed his position "after conclusion of the hearing" is incredible.

■ Respondent contends that, with respect to two discriminatees, their testimony as to their earnings prior to discharge, and their interim earnings elsewhere during discharge, was so inconsistent as to form no adequate basis for the examiner's finding as to lost earnings, and so untruthful that they should be penalized by being denied any relief whatever. As to the first of these contentions, concededly the testimony left much to be desired. It does not follow,

1. Part of the extensive discussion in respondent's brief reads as follows. "In view of the fact that the allegations in General Counsel's Backpay Specification set forth an acceptable formula * * * which would reflect the partial employment situation existing during the backpay period, * * * Respondent was justified in regarding the matter as not being in issue. * * * [The two attorneys representing the General Counsel] were bound by the allegations in the Specification and neither they nor the Trial Examiner should be permitted *to change their position after conclusion of the hearing.* * * * [Ital. ours] Respondent's Counsel justifiably regarded the matter as not being in issue. * * * If put on proper notice through an appropriate amendment of the Specification, Respondent might very well have introduced *additional* evidence. * * *" [Ital. in orig.]

2. Asked by the trial examiner, before any evidence was offered, to state the issues, counsel for respondent stated, "The first major issue is * * * the question of the appropriate measure of back pay. * * * [Reads specification]" Trial Examiner: "Are you objecting to that formula?" Respondent's counsel: "Providing that it is applied only to such weeks during which there was enough work for each of the discriminatees. * * * Now, we say that in computing the gross back pay we concede it is appropriate measure to determine what their average was during the period that they were employed to figure the average weekly pay. * * * We have no objection to using that average as the weekly measure, but we say that there were certain weeks during the back pay period when there wasn't enough work."

however, that the examiner was precluded, as a matter of law, from making a finding. We accept the view of the Second Circuit, NLRB v. Mastro Plastics Corp., supra, that there is a burden upon the Board to go forward with testimony from the employees as to their interim earnings. However, the ultimate burden of proof on this subject must be upon the respondent. The combination of these two might mean that totally unresolvable testimony from the discriminatees would result in a finding for the respondent. We will not say that this is what occurred here. Cf. NLRB v. Arduini Mfg. Co., 1 Cir., 1968, 394 F.2d 420. That part of a witness' testimony is not believable does not of itself destroy the rest. Nor do we find prejudicial evidentiary errors.

■ Respondent's penalty contention has been recognized in appropriate instances by the Board. M. J. McCarthy Motor Sales Co., 1964, 147 N.L.R.B. 605, 615–18; Jack C. Robinson, 1960, 129 N.L.R.B. 1040, 1050–52. It declined to apply it here. Respondent is scarcely one in a position to insist upon it.

■ While on the subject of the Board's duty to afford the employer an opportunity to examine the employees as to their interim employment, we note respondent's complaint that two discriminatees failed to appear even though summoned, or to explain why they failed to come. The Board required respondent to pay into escrow, subject to a future hearing, the amount which it claimed to be due these discriminatees. This is a Board rule. E. g., NLRB v. Brown & Root, Inc., 8 Cir., 1963, 311 F.2d 447. Respondent claims the rule should not be applied when the summons had been willfully disregarded, which he claims occurred, and particularly when respondent introduced evidence indicating that Counsel's claim on the discriminatee's behalf was excessive. While we are not without sympathy as to this last point, the rule has been elsewhere recognized, and we are not prepared to require an exception so long as the Board recognizes the obligation to produce the dis-

criminatee for examination before the escrow is released within the rule of NLRB v. Mastro Plastics Corp., supra.

The next question is when the unemployment period came to an end so far as respondent's responsibility is concerned. On April 15, in response to the Board's order, respondent wrote each unreinstated discriminatee as follows.

"You are hereby offered immediate and unconditional reinstatement to your former position in accordance with the order of the National Labor Relations Board. Please let me know within one week from the date of receipt of this letter whether you intend to accept this offer of reinstatement and when you will be available to return to work. If I do not hear from you by that time, I shall assume you do not wish to accept reinstatement."

He also sent a copy to the union. The addressees made no reply, but on April 21 the union responded that "each employee will be available for work within one week from the date of an individual directive to him to return to work." In reply respondent on April 27, after negotiations, wrote nine discriminatees requesting them to return to work on May 1. This they did. There were, in fact, only nine positions open. The examiner held that respondent's obligation for back pay extended until May 1.

■ The basis of the examiner's conclusion was his finding that respondent's letter of April 27 demonstrated that his April 15 letter was not an offer, but "only * * * an inquiry," and "fixes no time for the discriminatee to return to work." With this we cannot agree. In the first place, the letter of April 15 was not to be construed by what respondent wrote later after receiving no reply from the addressees and an only partially responsive reply from the union. In the second place, the letter was unambiguous. "Immediate and unconditional reinstatement" plainly fixed the time. This was not diminished by respondent's reasonable request for a response. We suspect

the examiner was misled by the fact that respondent did not have that many available positions, as the union may well have known, and therefore, as respondent says in his brief, if all had accepted, he would have given some of them employment accompanied by an instant lay-off, with placement on a preferential hiring list. However, this was respondent's total obligation, at least absent special circumstances; he was not to be held liable in damages for discriminatees for whom no work was available. Ethel J. Hinz, 1962, 140 N.L.R.B. 232, 235–36. We can understand that discriminatees who were then employed elsewhere, even if at less pay, might not want to give up their work simply to be laid off by respondent, and we can understand that even those for whom a working position was open might be unable to come forthwith. Respondent is, perhaps wrong in saying his obligation ceased the day he mailed the letters. However, any discriminatee who was free should have returned immediately after receipt. We would suggest that all others should return as promptly as possible, or, if they feared there were insufficient vacancies, should at least have inquired. An arbitrary postponement, at respondent's expense, was uncalled for. See Research Designing Serv., Inc., 1963, 141 N.L.R.B. 211, 216–17. So was a demand for further letters. Discriminatees, after being asked to return, had a clear way to mitigate damages. Certainly, also, there should be no two weeks grace period for those who did not return at all.

■ We mention one final matter which may not be large in dollars, but is important in principle. One of the discriminatees, while employed elsewhere driving a truck on the road, received $2.50 a day as lunch money, which he was allowed to spend or keep as he chose. The Board did not include this in his gross pay, taking the position that it was reimbursed expense. There is no indication that working for the new employer increased his food expenses, or that respondent would have paid a similar allowance. Payment by the substitute employer was not reimbursement, but additional income. Cf. Republic Steel Corp. v. NLRB, 1940, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6. Indeed, it was even taxable income. United States v. Correll, 1967, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537; Commissioner of Internal Revenue v. Bagley, 1 Cir., 1967, 374 F.2d 204, cert. denied Bagley v. United States, 389 U.S. 1046, 88 S.Ct. 761, 19 L.Ed.2d 838.

For the reasons stated the case is referred back to the Board for further consideration in the light of this opinion. No costs.