**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HARRAH'S CLUB, Respondent.**

**No. 21689.**

United States Court of Appeals Ninth Circuit.

Nov. 12, 1968.

---

Solomon I. Hirsh (argued), Robert M. Lieber, Washington, D. C., Roy O. Hoffman, Director, N.L.R.B., San Francisco, Cal., Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Washington, D. C., for appellant.

Nathan Berke (argued), of Severson, Werson, Berke & Bull, San Francisco, Cal., for appellees.

Before MERRILL and DUNIWAY, Circuit Judges, and CRARY, District Judge *.

CRARY, District Judge:

The National Labor Relations Board seeks a decree enforcing its Order of May 10, 1966, against respondent, Harrah's Club, pursuant to section 10(e) of the National Labor Relations Act, as amended (29 U.S.C. § 151 et seq.). The Board's decision and Order are reported in 158 NLRB No. 67. The alleged unfair labor practices occurred in State Line, Nevada, on Lake Tahoe, where the respondent operates a gambling casino and restaurant.

There were twelve employees in the unit involved, which consisted of stage technicians, apprentice stage technicians, and a sound console operator, employed by Harrah's Club at Lake Tahoe.

On August 14, 1963, the Union filed a petition (Case 20–RC–5597) for a representative election among the above described stage technician group. The respondent and the Union stipulated for certification upon consent election. Election was held October 14, 1963. Twelve voted for the Union.

On October 18, respondent filed timely objection to alleged conduct of the Union affecting the result of the election. After an investigation of the objections, the Regional Director, on November 15, 1963, issued his report recommending dismissal of the objections.

Respondent excepted to the recommendations, and on February 27, 1964, the Board issued its Decision and Certificate of Representation adopting the findings and recommendations of the Regional Director dismissing the objections and certifying the Union as the exclusive bargaining agent of the unit employees.

The Union, on February 29, 1964, requested respondent to bargain collectively pursuant to the certification issued February 27, 1964. On March 1, 1964, the respondent refused, and charges were filed against respondent on March 12, 1964.

The hearing before the Trial Examiner was had in October, 1964, and April, 1965.

The Board, with few exceptions, approved and adopted the Findings of Fact of the Trial Examiner. His detailed findings outline supporting evidence and testimony introduced at the hearing before him. The Board found that respondent was engaged in commerce within the meaning of the Act and that it violated Section 8(a) (3) and (1) by laying off employees, Allan Cole (January 19, 1964), who had the least seniority among the stage technicians, and Bruce Lovelady (March 5, 1964), who had next to the least seniority, because of their Union activities. The Board further found that respondent violated Section 8(a) (1), (3) and (5) of the Act by unilaterally prohibiting unit employees from receiving gratuities (tokes) from performers and entertainers who appear-

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

ed at Harrah's Club, and that it violated Section 8(a) (5) and (1) of the Act by refusing to recognize and bargain with the Union after its certification by the Board.

The respondent sets forth certain issues on appeal as follows:

I. Whether the Board should have reopened the record on respondent's motion following this court's decision in the prior case of NLRB v. Harrah's Club, 362 F.2d 425, (9 C.A.1966), to introduce evidence to establish substantial prejudice by the Board's assertion of jurisdiction.

II. Whether the Board should have granted respondent a hearing on its objections filed in the representation election proceedings.

III.A. Whether substantial evidence on the whole record is present to support the Board's findings that the layoffs of employees Cole and Lovelady were discriminatorily motivated and constituted violations of section 8(a) (1) and 8(a) (3) of the Act.

III.B. Whether findings of fact in the prior case of NLRB v. Harrah's Club, supra, were properly used as evidence to support the Board's findings and conclusions in the present case.

III.C. Whether respondent's offers of permanent full time employment to Cole and Lovelady on June 26 and July 1, 1964, were valid and made in good faith.

IV. Whether respondent's acts in discontinuing the practice of stage technicians receiving "tokes" from entertainers was the unilateral change of a condition of employment and remuneration in violation of section 8(a) (5) of the Act.

## I. *The Jurisdictional Issue*

Respondent argues that the matter should be reopened before the Trial Examiner to allow respondent to offer evidence on the jurisdictional issue, that is, whether respondent has suffered substantial prejudice by reason of the Board's regulation of gaming whereas it does not similarly regulate race tracks. The decision of this court in NLRB v. Harrah's Club, 9 Cir., 362 F.2d 425, held that the Board had statutory jurisdiction over gaming subject to review only on the question of whether, in the circumstances, unjust discrimination will result. The court said:

"Assuming that the criteria applied by the Board in determining to exempt racetracks from regulation are equally applicable to gambling casinos in Nevada, this alone is not sufficient to establish that regulation of the gambling industry will result in unjust discrimination. It must also be shown that the gambling industry will be substantially prejudiced by Board regulation because racetracks are not similarly regulated. See N.L.R.B. v. Gene Compton's Corp., supra [262 F.2d 653]." [Page 427]

The Union urges that although the decision of this court in NLRB v. Harrah's Club, supra, was not made until June 14, 1966, the respondent was bound to state with particularity the evidence it sought to introduce, preferably by affidavit of the proposed witnesses, and exactly what it expected to prove thereby in support of its "Motion to Remand to the Examiner and Reopen the Record," filed June 22, 1966. This was not done nor did respondent make a showing as to why it failed to produce the facts at the original hearing. Respondent contends it did state the evidence it sought to introduce but it appears it merely set forth how it expected to obtain the evidence it proposed to offer in support of its position without stating what the evidence would be.

No new principle of law was announced in the prior *Harrah's Club* case,

supra, which might be said to excuse the respondent from stating the evidence it sought to introduce. NLRB v. Gene Compton's Corp., 262 F.2d 653, 655–656 (9 C.A.1959).

The court concludes the respondent's position is not well taken in the circumstances and the Board's Order denying the respondent's motion to remand for the purpose of offering evidence on the jurisdictional issue was proper. NLRB v. Southern Bleachery & Print Works, Inc., 257 F.2d 235, 241 (4 C.A.1958).

## II. *Respondent's Objections to Election Proceedings*

In support of respondent's position that the Board should have granted a post-election hearing on its objections filed in the representation proceedings, it urges that the Union's certification was invalid because of interference in the election by the Union, in that the Union:

(1) Induced employees to vote for it by promising them

    (a) back overtime pay alleged due;

    (b) jobs in Las Vegas, Nevada, or in California;

    (c) it would prevent respondent from cutting the stage crew to less than its present complement of twelve men.

(2) Threatened to blacklist employees and prevent them from obtaining employment elsewhere under Union jurisdiction if they did not vote for the Union; and

(3) Waived its rules with respect to taking tests, paying initiation fees and other requirements and issued membership cards in the union to the employees on the condition that they vote for the union.

The respondent would have been entitled to a hearing if substantial and material factual issues existed which could be resolved only after a hearing. NLRB v. Bata Shoe Company, Inc., 377 F.2d 821, 825–826 (4 C.A.1967). The court, in the *Bata Shoe* case, holds that no hearing is required in the absence of substantial and material issues crucial to determination of whether National Labor Relations Board election results are to be accepted for purposes of certification (page 826). In discussing the need for hearing, the court states:

"A hearing is unnecessary, therefore, where if all the facts contended for by the objecting party 'were credited no ground is shown which would warrant setting aside the election.' NLRB v. Air Control Prods. of St. Petersburg, Inc., supra, 335 F.2d [245] 249; accord, NLRB v. Sun Drug Co., supra, 359 F.2d [408] at 414; NLRB v. Wilkening Mfg. Co., 207 F.2d 98, 100 (3d Cir.1953)." [Page 826]

It appears that the facts contended for by the respondent, if true, would warrant setting aside the election. However, there remains the question of the effect of the affidavits of certain of the stage technicians which refute the majority of the statements attributed to them, as set forth in affidavits offered by respondent of supervisory personnel and Paul E. Jordan, an employee of respondent but not a member of the stage technicians unit. The affidavit, which respondent relies. on, set forth alleged statements made by various stage technicians of promises by the Union of benefits which would result to the stage technicians if the Union were voted in, and problems, including that of getting work, if the vote should be unfavorable to the Union.

The Regional Director made an ex parte investigation of respondent's objections and reported no evidence in support of the objections "other than purported conversations between rank and file employees which were reported to management officials." There was no evidence of alleged promises by named officials or agents of the Union. He concluded the objections did not raise substantial and material issues of fact and recommended the Board over-

rule them. The Board adopted the recommendations of the Regional Director.

Thereafter the Trial Examiner refused respondent's request that the Board produce all affidavits taken by the Regional Director in his investigation of Respondent's objections to the election. The respondent then offered in evidence before the Trial Examiner the affidavits it had given to the Regional Director in support of its objections. The Trial Examiner refused the affidavits on the grounds he did not have authority to re-litigate the issue which had been determined by the Board and had no authority to review or consider the issues decided by the Board upon which its certification of the Union was based.

The respondent requested permission to appeal from the ruling of the Examiner rejecting its affidavits and refusing to order the production of the affidavits obtained by the Regional Director. This request was denied.

The court, in NLRB v. Air Control Products, 335 F.2d 245, 249 (5 C.A. 1964), considered the circumstances which would require a hearing on objection to the election there involved, stating:

> "Of course it is clear that § 8(a) (5) orders which rest on crucial factual determinations made after *ex parte* investigations and without hearing cannot stand."

The court later, in the same paragraph, observes:

> " * * * the case law is clear that the Director is not required to grant a hearing on objections when the presentation of the objecting party demonstrates that if all the evidence were credited no ground is shown which would warrant setting aside the election."

In NLRB v. Sun Drug Co., 359 F.2d 408, 414–15 (3 C.A.1966), the court was concerned with evidentiary hearings. It states, at page 414:

> "Judicial decisions have clearly established that the courts will review Board orders based on the disposition of challenges to crucial ballots without an evidentiary hearing to insure that they are consistent with these rules. The parties are entitled to such a hearing if substantial and material factual issues are raised, and if the Board has clearly erred in denying a hearing its order will not be enforced."

In holding that an evidentiary hearing was not required in that case, the court states:

> "In any event, respondent here sought an evidentiary hearing to determine whether there was a substantial and material question of fact. This is a question of law and due process does not require an evidentiary hearing as a prerequisite to a valid determination of a question of law."

■ This court concludes that the Trial Examiner did have authority to consider and decide the question of whether there was a substantial and material issue of fact crucial to the determination of the propriety of certification of the election results. The court also concludes that if all the facts contended for by the respondent were credited, there would be grounds which would warrant setting aside the election. As stated by the court in NLRB v. Bata Shoe Company, supra:

> "Due process of law · demands and the present Rules and Regulations of the Labor Board provide that where there is a substantial and material issue of fact relating to the validity of a representation election that a hearing be conducted at some stage of the administrative proceeding before the objecting party's rights can be affected by an enforcement order." [Page 825]

### III. *The Layoff of Messrs. Cole and Lovelady*

On January 19, 1964, stage technician Allan Cole was laid off. He had served

as Union observer in the representation election on October 14, 1963, and was told the layoff was part of a general economy cutback and had nothing to do with his work and that he would be recalled when needed. He returned for temporary employment one day in January and from February 7 to March 5, 1964. Temporary employment offered to Cole on May 7 and June 23, 1964 was refused. On July 1, 1964 respondent offered Cole permanent employment to commence July 5. This offer Cole rejected as not giving him sufficient time to terminate his present employment and make the move to State Line. He stated he would need at least four weeks notice to accept. The Trial Examiner found that respondent's offer of permanent employment did not give Cole a reasonable period of time within which to report but that his demand for four weeks notice was unreasonable and he did not ask for or indicate he would accept employment within a reasonable period, and that he had, therefore, rejected respondent's offer.

It was further found that on March 5, 1964, Assistant Stage Manager, Bruce Lovelady, was laid off and told by respondent his layoff was part of a general economy cutback and had nothing to do with the quality of his work. He was offered temporary employment on May 5 and June 13, 1964, and on June 26, 1964, full time permanent employment to commence June 30. All of these offers were rejected. The reason for rejection of the permanent employment, as stated by Lovelady, was "No mention of unconditional reinstatement or back pay. The answer is no." The Trial Examiner found that although respondent had not allowed Lovelady a reasonable time to report, his refusal was the rejection of a valid offer of re-employment.

■ The Board concluded that the offers of permanent employment to Cole and Lovelady were not valid because they did not allow a reasonable period of time for reporting. This court concludes that, in the circumstances, as evi-denced by the record, the decision of the Trial Examiner was correct and that the offers of permanent employment to both Cole and Lovelady were bona fide and valid and were rejected.

■ The respondent's contention that Messrs. Cole and Lovelady were laid off as a result of economic measures, on the recommendation of a management consultant, was not followed by the Trial Examiner, who found that the layoffs "* * * were discriminatorily motivated and constituted violation of Section 8(a) (1) and (3) of the Act." He also found that respondent's contention that Lovelady, as Assistant Stage Manager, was a supervisor was without merit. These findings, the court concludes, are supported by substantial evidence. NLRB v. Lindsay Newspapers, Inc., 315 F.2d 709, 712 (5 C.A.1963); and NLRB v. City Yellow Cab Co. et al., 344 F.2d 575, 580–581 (6 C.A.1965).

There was a finding that the first report of the management consultant firm was made in September, 1962. It did not recommend manpower totals or optimums but advised budget and wage ratio reports for each department. Certain economies were effected, such as elimination of two secretaries (late 1963 or early 1964), reduction of chorus line by four girls (late 1963), cutting of advertising budget by $100,000 to $200,000, reduction in the number of executives' automobiles, number of acts in the lounge reduced from five to two, and hours of entertainment in the lounge from twenty-four to approximately twelve.

Reductions in personnel were effected in several departments but in some instances the employee eliminated was found work in the organization. Some personnel reduction was by attrition.

Less expensive "light" shows and a less number of "heavy" shows were sought for the South Shore Room. These economies resulted in reducing the 1963–64 overall budget by 10% and a 10% cut was forecast for 1964–65 budget.

The economy program, the Trial Examiner found, had been ordered by top management in all departments without consideration of the needs of the participating departments. The decision was made and the program ordered carried out across the board.

The record shows that Mr. Patrick France, Vice President in charge of public relations, entertainment, publicity, special events and advertising, testified relative to the economy program and budget cuts totaling over $300,000 in the years of 1962–63 and 1963–64 and further cuts in 1964–65. He started pushing the 1962–63 cuts at the beginning of 1963. At the time of the layoff of Cole and Lovelady, on March 5, 1964 (Cole had been recalled to work on February 7, 1964, and was again laid off on March 5, 1964), he had asked his entertainment department to simplify the production and they wanted to wait until the following show because they had extensive props ready for the show coming up. Mr. France testified he said: "I want to start now, and I said the same thing to my advertising department, public relations, all departments. I said I want to start immediately."

The decision to lay off Lovelady on March 5 was made a few days after the Board overruled respondent's objections and certified the Union (February 27, 1964), and the respondent's refusal to bargain on March 1, 1964. The Trial Examiner found that the respondent was economy conscious and was successfully reducing costs and expenses and "At the same time respondent was anti-Union conscious and had engaged in unfair labor practices (20–CA–2839) during the Fall of 1963, which unfair labor practices remain unremedied. The layoffs served both purposes." In ruling that the economy program was used as a pretext to accomplish the acts of discrimination, he considered the timing of the layoffs, the haste with which they were done, the warning and predictions that " * * * this would be a consequence of Union activity * * * ". The Exam-iner further found that it appeared from the evidence, as supported by the statements attributed to supervisory personnel in the prior case of NLRB v. Harrah's Club, 362 F.2d 425 (9 C.A. 1966), that the layoffs stemmed from respondent's opposition to the Union activities of the stage technicians.

After considering the evidence pertinent to the point, this court concludes that the findings in regard to the reasons for the laying off of Cole and Lovelady are supported by substantial evidence and that the Trial Examiner properly considered the facts found in the earlier case of NLRB v. Harrah's Club, supra, in reaching his conclusion. Those facts, as noted above, concerned respondent's opposition to the Union and Union activities of the stage technicians as evidenced by statements of respondent's supervisory personnel.

In considering the effect of the layoff of Cole and Lovelady, the question arises of whether the moving cause for the layoffs was their Union activity or the respondent's economy program.

Respondent urges that the Trial Examiner and the Board committed error by taking judicial or "official" notice of the facts found by the Trial Examiner in the earlier case as the basis for the findings of Union prejudice in the instant matter. The importance to the Examiner of the facts found in the prior case is demonstrated by the numerous quotations in his findings of statements of supervisory personnel of the respondent, in that proceeding, in support of the conclusion of unfair labor practice in the layoff of Cole and Lovelady and in the rescinding of "tokes" in the instant proceeding.

■ As noted above, charges were filed herein against the respondent on March 12, 1964, and evidence of any unfair labor practice which may have occurred during the period of six months prior thereto was properly considered by the Examiner and the Board as substantive evidence in determining the is-

sues raised by the charges (29 U.S.C. § 160(b)).

▮ Official or administrative notice of the facts there found, which occurred after September 12, 1963, (six months prior to the filing of charges) was proper and those facts were properly considered as substantive evidence in the instant case. The facts which occurred prior to September 12, 1963, were validly considered as background evidence. This is the holding of the weight of authority. S.D. Warren v. NLRB, 353 F.2d 494, 497 (1 C.A.1965); NLRB v. Stafford Trucking, Inc., 371 F.2d 244, 246–247 (7 C.A.1966); NLRB v. Lee-Rowan Co., 316 F.2d 209, 211 (8 C.A. 1963); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 527–530, 66 S.Ct. 687, 90 L.Ed. 821 (1940); Local Lodge 1424 v. NLRB, 362 U.S. 411, 416–417, 80 S.Ct. 822, 4 L.Ed.2d 832; and NLRB v. Murray Ohio Mfg. Co., 326 F.2d 509–511 (6 C.A.1964).

The court concludes there was substantial evidence properly before the Trial Examiner to support the finding of unfair labor practice as a moving cause for the layoff of Cole and Lovelady.

▮ The provisions of Title 5, U.S.C. section 556(e),[1] are deemed not to have been violated, as the findings of fact in the prior case, of which official notice was here taken, were in a fully litigated proceeding between the same parties with similar interests and were not a commonly accepted or well established matter which judicial notice usually involves. It is also to be noted that the respondent did not seek to offer contrary evidence in the present proceeding.

## IV. *Termination of Tokes*

The Trial Examiner found that on December 23, 1963, respondent posted a notice on the bulletin board to the effect that since there had been some dissension among stage technicians on the matter of receiving gratuities or "tokes," they were no longer to be accepted.

Prior to December 23, 1963, tokes had been customarily received by stage technicians from entertainers in excess of $300 per year. This appears to be supported by amounts received in 1963 and by employee record of tokes in 1962 and part of 1961. Generally, the tokes were handed in envelopes to each stage technician on the last night of the show by one of respondent's supervisors, such as Mr. Barkow or Mr. Lein. Occasionally the performer himself would give the tokes to the technicians.

After the posting of the notice in December, 1963, the tokes were no longer received from performers by stage technicians or any other employees of respondent with the exception of one electric razor to employee Paul Jordan.

Respondent contends that the notice of December 23, 1963, precluding the taking of tokes, was posted by reason of controversy which arose in December, 1962, over failure of Stage Manager Lein to distribute a toke of $800 " * * * given by the Flower Drum Song Show * * *."

Early in 1964, the respondent, in a reprinting of its booklet, "You and Your Job," order that no tokes be taken when a service is performed, not for a customer but for someone doing contractual work for Harrah's, and when Harrah's pays the employee specifically for performing such service. Prior to 1964 and since June, 1963, tokes to employees from "customers" of Harrah's had been approved in the booklet, "You and Your Job."

The Trial Examiner found that the notice of December 23, 1963, prohibiting tokes to stage technicians from performers or entertainers, " * * * was caused by and in retribution for their Union activities," and although respondent had the right to discontinue the receiving of

---

1. Title 5, U.S.C. § 556(e): " * * * When an agency decision rests on official notice of a fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary."

tokes, it could not do so as retribution for employee's Union activities.

He also found that toking was general practice in the entertainment business although there were places where it was not done. The prohibition against tokes, the Examiner said, unilaterally changed a condition of employment and the remuneration of the stage technicians in violation of section 8(a)(5) of the Act.

The propriety of the consideration by the Trial Examiner and the Board of the findings in the prior case of NLRB v. Harrah's Club, supra, regarding respondent's motives in terminating the receipt of tokes has been discussed hereinabove.

In holding that the respondent engaged in unfair labor practice by its unilateral termination of tokes on December 23, 1963, the Board cites the case of NLRB v. Wonder State Mfg. Co., 344 F.2d 210, 213 (8 C.A.1965). The court there states:

"The rule is that gifts per se—payments which do not constitute compensation for services—are not terms and conditions of employment, and an employer can make or decline to make such payments as he pleases, but if the gifts or bonuses are so tied to the remuneration which employees received for their work that they were in fact a part of it, they are in reality wages and within the statute. This is a question of fact and, if the Board's finding to that effect is supported by substantial evidence, the finding must be accepted on review." [Citing numerous cases.]

There is no doubt that tips such as those from customers to employees are often so tied to the wages of the employee as to make them, in fact, a part thereof. The tokes here involved may well be termed "tips" to employees for services rendered by them to the entertainers employed by respondent and may be deemed comparable to tips from customers to employees which are generally regarded as part of the employee's salary in the restaurant trade. Club Troika, Inc., 2 N.L.R.B. 90, 94.

The Trial Examiner found that tokes had been customarily received by stage technicians from entertainers in excess of $300 per year for over two years prior to the termination on December 23, 1963. It appears there was substantial evidence to support the Board's conclusion that the unilateral discontinuance of the receiving of tokes by the stage technicians was an unfair labor practice. The toking between performers and stage technicians was a term or condition of their employment within the meaning of section 8(d) of the Act which the employer could not unilaterally change without consulting the employees' representative, regardless of his motive.

As stated by the court in NLRB v. Detroit Resilient Floor Decorators Local Union No. 2265 of the United Brotherhood of Carpenters and Joiners of America, 317 F.2d 269, 270 (6 C.A. 1963):

" * * * 'wages, hours, and other terms and conditions of employment' include all emoluments of value or other benefits accruing to employees out of their relationship with their employer."

The tokes were an emolument of value which accrued to the stage technicians out of their employment relationship. NLRB v. Central Illinois Public Service Co., 324 F.2d 916, 919 (7 C.A.1963).

## CONCLUSION

To summarize the rulings of the court on the issues argued by the parties:

The Board is not required to reopen the record to permit respondent to introduce evidence to establish prejudice by the Board's assertion of jurisdiction.

The Board is required to grant respondent a hearing on its objections filed in the representation election proceedings.

There is substantial evidence that Bruce Lovelady was an employee of respondent and that he did not have supervisory status.

The layoffs of Cole and Lovelady were established by substantial evidence, which was properly considered by the Board, to have been motivated by their union activities, to be discriminatory and to be unfair labor practices. Said employees are entitled to reimbursement of loss of pay suffered from this discrimination.

The respondent made valid and bona fide offers of permanent full time employment to Cole and Lovelady on June 26 and July 1, 1964, respectively, which each of them rejected.

The termination of the acceptance of tokes was a matter which required collective bargaining and there was substantial evidence, which was properly considered by the Board, to support the conclusion that the discontinuance of toking was discriminatory, motivated by anti-union animus and unfair labor practice. The stage technicians are entitled to be made whole for any loss suffered by the discontinuance of tokes.

The case is remanded for hearing of respondent's objections filed in the representation election proceedings. However, the other issues have also been decided to avoid the necessity of another appeal to this court involving these issues should the objections of respondent to the election be ultimately overruled and dismissed by the Board.