**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BETTS BAKING COMPANY, Respondent.**

**No. 8813.**

United States Court of Appeals, Tenth Circuit.

July 8, 1970.

Baruch Fellner, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Herman M. Levy and Robertamarie Kiley, Attys., N.L.R.B., on the brief), for petitioner.

William G. Haynes, of Eidson, Lewis, Porter & Haynes, Topeka, Kan., for respondent.

Before MURRAH, SETH and HOLLOWAY, Circuit Judges.

MURRAH, Circuit Judge.

This enforcement proceeding is a sequel to Betts Baking Co. v. N.L.R.B., 380 F.2d 199 (10th Cir. 1967), in which we sustained the Board's finding that Betts' employees Brown and Mummey had been discriminatorily discharged in violation of Section 8(a) (3) and (1) of the National Labor Relations Act. We enforced an order that Brown and Mummey be offered reinstatement and made whole for loss of pay resulting from the discriminatory discharges. The present dispute concerns the termination date of Betts' backpay obligation.

The Board asserts that a valid offer of reinstatement has never been made to Brown and that Betts' obligation to him continues to this date. The Board concedes that Betts made a valid offer of reinstatement to Mummey on July 8, 1967. Betts contends that it made valid offers of reinstatement to both Brown and Mummey by letters dated July 23, 1965, which were received at their respective residences on July 27, 1965. It is undisputed that Brown read his letter on the date of receipt but that Mummey was working out of town on a new job and did not read his letter until July 30, 1965. Neither Brown nor Mummey responded to the letters by August 1, 1965, i. e. the final date stated in the letters for acceptance. Nor did either of them attempt to secure additional time in which to make a decision or report for work. Mummey did seek re-employment with Betts about two weeks after reading the letter but was not hired. The material parts of the letters stated that:

"This is a letter offering you reinstatement in our Company as a transport driver. Please report to work Sunday August 1, 1965. You will have the same pay scale as you did before, while working for me.

"If you fail to report at this time, I will understand that you are not interested in reinstatement with this company."

The Board found that " * * * these offers were invalid due to the unreasonably short period of time in which Mummey and Brown were required to reach a decision on acceptance.", and that " * * the discriminatee[s] would have been required to leave [their] present job[s] while giving less than reasonable notice." The Board moreover seemed to thing that the "ambiguous" nature of the offers,

i. e. the offers " * * * seemed to [say] that the discriminatees would be reinstated at their old, rather than the current, increased pay scale,"[1] and Betts' refusal to reinstate Mummey upon his request indicated that Betts was complying in form only with the Board's prior order.

The question we must answer is whether there is substantial evidence on the record considered as a whole to support the Board's finding that the offers of reinstatement provided an unreasonably short period of time for acceptance. The Board cites four cases to support its order, i. e. Thermoid Company, 90 N.L.R.B. 614 (1950); Harrah's Club, 158 N.L.R.B. 758 (1966); Portage Plastics Co., 163 N.L.R.B. 753 (1967); Rybolt Heater Co., 173 N.L.R.B. No. 89 (1968). Only one of them is sufficiently like our case to warrant discussion.

In the Harrah's Club case, the trial examiner found that the offers of reinstatement required an unreasonably short time for acceptance. But he concluded that one discriminatee had rejected the offer by making an unreasonable demand for additional time. And that the other discriminatee's rejection was not influenced by the unreasonably short period of time provided for acceptance.

The Board overturned the trial examiner, holding that the discriminatees were not obligated to seek additional time in which to accept. But the Ninth Circuit agreed with the trial examiner that the discriminatees' conduct constituted rejection of valid offers of reinstatement. N.L.R.B. v. Harrah's Club, 403 F.2d 865 (9th Cir. 1968).

■ We cannot agree with the Board's decision in Harrah's Club, supra, that an employee is under no duty to respond within a reasonable time once an offer of reinstatement has been made. Both employer and employee are bound by the requirement of good faith dealings with each other. And it does not place an undue burden on the employee to require him to inform his employer of his intentions concerning reinstatement within a reasonable time after notice. Such a requirement is fair to both parties and consistent with the goal that an employee discharged for discriminatory reasons should be given a reasonable opportunity to return to his former employment. The reasonableness of the time for reporting will depend on the totality of the circumstances surrounding the making of the offer of reinstatement and the employee's response thereto. N.L.R.B. v. Izzi, 395 F.2d 241 (1st Cir. 1968); N.L.R.B. v. Harrah's Club, supra. This brings us to an application of these principles to the facts of each discriminatee.

### Brown

■ At no time did Brown ever indicate that the August 1 date for reporting was unreasonable or that it influenced his failure to respond to the letter from Betts. Indeed on cross-examination, Brown admitted that he did not need additional time to inform his employer that he was returning to Betts.[2] And it was stipulated that no particular period of time was required for notice to his employer. Considered as a whole, Brown's testimony simply does not afford any evidentiary support for the Board's finding that the August 1 date for reinstatement was unreasonable.

### Mummey

Mummey did testify that the time limitation of August 1 was a reason for

---

1. It is undisputed that for the pay period ending June 26, 1965, workers in the same class as Brown and Mummey received a $5.00 per week general pay increase.

2. Q. (By Mr. Haynes) You didn't respond to Mr. Betts' offer of reinstatement of July 23rd because you needed additional time to give Detroiter Mobile Homes notice of your quitting?
A. Not additional, but I don't think its right.
Q. You didn't think it was right, personally, to what?
A. To just up and quit in the middle of a week and say I'm going back.

his failure to respond to the letter by that date. And it may reasonably be inferred that the August 1 date was unreasonably short since Mummey did not read the letter until July 30. But our inquiry does not end there for we must also examine Mummey's conduct subsequent to reading the letter.

The evidence is clear that he did not decide to accept reinstatement until he learned about ten days after reading the letter that his new job would require moving from Hutchinson, Kansas to Dodge City, Kansas.[3] Until that time, Mummey did not indicate to Betts that he intended to accept re-employment or that he needed additional time in which to make that decision or in which to report for work. It is apparent that Mummey delayed responding to the letter until his new job became less desirable.

 We think that Mummey's failure to complain of the time limitation precludes him from complaining of the reasonableness of the reporting time. N.L.R.B. v. Izzi, supra; N.L.R.B. v. Harrah's Club, supra. We hold therefore that Betts' obligation to offer reinstatement was satisfied as of August 1, 1965. Since Mummey failed to make any response by that date or within a reasonable time thereafter, he is not entitled to backpay after August 1, 1965.

The Board's order is modified to provide backpay to Bob Mummey from January 11, 1965, until August 1, 1965, as calculated in the Trial Examiner's Supplemental Decision and to provide back-

pay to Robert Brown from February 5, 1965, to August 1, 1965, as calculated in the Trial Examiner's Supplemental Decision plus interest to both Brown and Mummey at the rate of six (6) per centum per annum as provided in the Trial Examiner's Supplemental Decision. As so modified, the order will be enforced.

Order enforced as modified.

---

3. Q. (By Mr. Herzog) You have heard the testimony here about your conversation with Mr. Betts and it has been stipulated that that occurred on the 13th. I'd like for you to explain to the Trial Examiner how that conversation came about, how you came to go down to see Mr. Betts.

A. First off, around the 9th or 10th of August, approximately, I was in McPherson, Kansas, and I got word that there was a possibility I was going to be permanently assigned to Dodge City. (Tr. 224).

TRIAL EXAMINER: All that made the job you had a little more desirable?

THE WITNESS: Yes sir. Then when I found out that I was going to Dodge City, that's when I decided I had better see and that's when I called or talked to Howard, this transport driver, on the 12th when he was eating supper and I was drinking a cup of coffee with him. I called Brunkner after visiting with him. (Tr. 238, 239).