**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**W. R. AMES COMPANY, Respondent.**

**No. 26750.**

United States Court of Appeals,
Ninth Circuit.

Nov. 16, 1971.

Merrill, Circuit Judge, dissented and filed opinion.

**1210**

Warren M. Davison, Deputy Asst. Gen. Counsel (argued), James P. Hendricks, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C.; Roy O. Hoffman, Director, N.L.R.B., San Francisco, Cal., for appellant.

Allen W. Teagle (argued), Wesley J. Fastiff, of Littler, Mendelson & Fastiff, San Francisco, Cal., for appellee.

Before JERTBERG and MERRILL, Circuit Judges, and KELLEHER,* District Judge.

JERTBERG, Circuit Judge:

The National Labor Relations Board seeks a decree enforcing its order of May 18, 1970, against respondent, W. R. Ames Company, pursuant to Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C. Sec. 151, et seq.). The Board's decision and order are reported in 182 NLRB No. 69. The alleged unfair labor practices occurred at Fresno, California, where the company is engaged in the manufacture, sale, and installation of sprinkler irrigation systems. The Board's jurisdiction is uncontested.

*The Representation Proceedings.*

On January 14, 1969, International Association of Machinists and Aerospace Workers, AFL–CIO, District Lodge No. 87, filed a petition for a representative election. The company and the union stipulated for certification upon consent election.

On May 23, 1969, the election was conducted among the company's Fresno maintenance employees including truck drivers and shipping and receiving clerks. Of the twenty-four employees of the company voting in the election, fifteen cast ballots for the Union, seven voted against it, and two ballots were challenged. The company filed timely objections to alleged conduct of the union which the company claims prejudicially affected the results of the representative election.

In support thereof, the company presented affidavits of several of its employees. In substance such employees stated, in relevant and material part, that prior to the representative election, at union meetings at which were present groups of the company's employees, union representatives stated as follows:

Charlie Davis—worked for Ames in Fresno 5 years; went to two Union meetings before the election, one of them was shortly before the election. At one of the above mentioned meetings a union representative named Bob said that he did not know what would be in the contract between Union and Company but that there would be a contract.

Edward Ortega—worked for Ames about five weeks; attended one Union meeting at Union Hall. Two union representatives were there, one of whom said we would only have to pay $10 initiation fee and $6 per month Union dues, but that after the union got in, the initiation fee would be higher, something like $60.00 approximately. They did not promise the contract would be exactly the same as Milpitas but did say we would have a contract. They said if there was a strike, the union would pay us $50 strike benefits and the company

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

was wrong when it said strike benefits would be only $20.00.

George Simpson—stated Mr. Lamont, Union representative, talked to employees at the meetings which Simpson attended and told us union initiation fee (for those of us who were in the election) would be $10 including the first month's dues and then the dues would be about $6 per month but after the union got in new members individually would have to pay more; did not promise any certain wages but he said there would be a contract if the union won the election; that strike benefits would be $50 after two weeks of a strike after you were in the union six months.

Raymundo C. Hernandez—attended four Union meetings before election. At one of the meetings strike benefits were discussed and the union representative said in case of strike the men on strike would be paid $55.00 to $60.00 each week; a paper explained initiation fee and Mr. Lamont said initiation fee would be $10.00 and $10 to any new members later on. Mr. Lamont said monthly dues would depend on the classification and would be a maximum of $6.00 or $7.00.

John Ayres—attended four or five Union meetings before the election. At the last meeting attended, the day before the election, the subject of strike benefits came up. Three union representatives were present—one of whom was Bob Lamont. One of the union representatives stated that depending on membership, weekly strike benefits could range from $25.00—$50.00 and $75.00. There were approximately fifteen Ames employees at that meeting.

As additional objections the company urged:

(1) that the official notice of election which the company was required to post was materially misleading and confusing to employees in respect to their rights under the Act to refrain from joining the union, and (2) the requirement that the company submit to the Regional Director the names and addresses of eligible employees to be turned over to the union was improper.

After an ex parte investigation by the Acting Regional Director, she rendered her report recommending that the company's objections be overruled. The company filed timely exceptions to the Acting Regional Director's report, asking that the recommendations be overruled and reversed, the election set aside and a new election directed, or, in the alternative, that the hearing officer be ordered to conduct a hearing and determine the facts and resolve the credibility conflict.

In her report on objections the Acting Regional Director, in substance, stated:

Union consistently told employees the initiation fee was $10 and made no statement concerning a lesser amount; advised employees that dues were reduced only during a layoff period; in response to questions about strike benefits, answered such benefits depended upon membership for at least six months, that benefits were made to those who did strike duty, the members themselves voting on the amount of money to be paid from the Local's fund and if the Grand Lodge sanctioned the strike, it would reimburse the Local $25 per striker per week, mentioned different amounts of benefits employees could receive, but made it clear the amounts depended on such factors as time, the members' desires and the Local's fund; that some employees made their own calculations based on union's statements but there was no evidence any of the statements misrepresented facts. Union told employees it would get a contract with the employer but could not make any promises about what would be in it; that it would try to obtain an agreement close to one it had with employer at another location [Milpitas]; and concluded Union made no threats, improper promises or material misrepresentations and recommended that the objections be overruled.

In respect to (1) above, the report stated: although employer points out the right to refrain from joining a union is limited by the Act in event a lawful union security agreement exists, the Notice is informative of employee rights in a pre-election situation and does not purport to cover all situations; concluded the Notice is not misleading and recommended the objection be overruled.

And in respect to (2) above the report stated: such objection lacks merit. The employer complied with the requirement to furnish names and addresses and cannot use his compliance as basis for later objecting to the election.

On October 13, 1969, the Board issued a decision adopting the Acting Regional Director's findings and recommendations overruling the company's objections to the election, denying its motion for an evidentiary hearing, and certifying the Union as the statutory bargaining representative of the employees.

The appropriate standard by which we are to assess the parties' conduct in a representative election is whether the allegedly offending conduct, in fact, constituted interference with, or inhibited, the free choice of the employees in the selection of their bargaining representative. Gallenkamp Stores v. N.L.R.B., 402 F.2d 525 (9th Cir. 1968).

As a footnote to its finding adopting the report and recommendations of the Acting Regional Director on the company's objections to the representative election, the Board stated:

"We find that even if all the facts alleged in the attachments to the Employer's exceptions were true, such facts would not warrant setting aside the election. Accordingly, we find that the Employer's exceptions to the Acting Regional Director's recommendation that objections 2, 5, 6, and 7 be overruled do not warrant reversal of the Acting Regional Director with respect thereto, or a hearing."

In our view such finding is not supported by substantial evidence on the record considered as a whole.

The report of the Acting Regional Director is based on an ex parte investigation. The report does not advise us what persons were or were not interviewed by the author of the report. No credibility determinations appear in the report. Factual issues raised by the company were not resolved in the report. The report ignores many of the averments set forth in the affidavits of the employees above summarized. The report concedes, as set forth in several of the affidavits of employees, that Union representatives in various pre-election meetings assured the employees that there would be a collective bargaining contract if the Union won the election. The report states that the Union consistently told employees the initiation fee was $10.00, and made no statement concerning a lesser amount, notwithstanding averments in the affidavit of Simpson, who stated that the Union told him and other employees that the initiation fee would be only $10.00, which sum included the first month's dues, but that after the Union got in, those employees who had not joined the Union would have to pay more. Ortega stated in his affidavit that the Union told him and other employees that the initiation fee would be only $10.00 for employees joining prior to election and that employees who did not join until after the Union got in would have to pay $60.00.

The portion of the report discussing statements made by the Union concerning strike benefits differs widely from the averments contained in the affidavits of employees on the same subject.

We conclude from an examination of the record as a whole that the Board erred in reaching its decision without first causing an evidentiary hearing to be held on the company's objections to the election.

"Due process of law demands and the present Rules and Regulations of the Labor Board provide that where

there is a substantial and material issue of fact relating to the validity of a representation election that a hearing be conducted *at some stage* of the administrative proceeding before the objecting party's rights can be affected by an enforcement order." (Citations omitted.)

N.L.R.B. v. Bata Shoe Company, 377 F.2d 821, 825 (4th Cir. 1967.)

See also N.L.R.B. v. Harrah's Club, 403 F.2d 865 (9th Cir. 1968.)

We conclude that the company's additional objections, set forth as (1) and (2) above, lack merit.

Enforcement of the Board's order is denied, and the cause is remanded to the Board for an evidentiary hearing, before a Hearing Officer, on the remaining objections of the company to the conduct of the election, with full opportunity to the parties to present witnesses and to examine and cross-examine them.

MERRILL, Circuit Judge (dissenting):

By regulation, 29 C.F.R. § 102.69(e), it is provided that where exceptions are taken to the regional director's report made after investigation of a consent election and "it appears to the Board that such exceptions do not raise substantial and material issues with respect to the conduct or results of the election, the Board may decide the matter forthwith upon the record * * *."

As the majority opinion points out, the Board here has determined that "even if all the facts alleged in the attachments to the Employer's exceptions were true, such facts would not warrant setting aside the election." I find no error in that determination. Implicit in it is a finding that any alleged inconsistencies in union statements made to employees respecting initiation fees and strike benefits were not of such moment as to constitute interference with or inhibition of the free choice of the employees in the selection of their bargaining representative.

I do not see how we can possibly question that finding. Improper inducement does not appear. The employer's mere recitation of the claimed inconsistencies and inadequacies in the union's election campaign statements does not at all persuade me that had the truth been known (whatever it may be) the vote of the employees might have been different. If the hearing ordered by the majority should show the employer's allegations to be true, as already hypothesized by the Board, it is not clear to me how the Board could reach or ought to reach any different conclusions of law. Accordingly I fail to see what a hearing would accomplish. *See generally* Sonoco Products Co. v. N.L.R.B., 399 F.2d 835, 839 (9th Cir. 1968); N.L.R.B. v. J. R. Simplot Co., 322 F.2d 170, 172 (9th Cir. 1963).

I would enforce the Board's order.