**CONSOLIDATED FREIGHTWAYS,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent,**

**Charles Hennessey, Intervenor.**

**No. 81–1132.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1981.

Decided Dec. 11, 1981.

---

**2.** The instant lawsuit was filed on August 18, 1980.

Sandra P. Zemm, Chicago, Ill., with whom Zachary D. Fasman, Washington, D. C., was on the brief, for petitioner.

Michael Stein, Atty., N. L. R. B., Washington, D. C., of the bar of the Supreme Court of Texas pro hac vice by special leave of the Court, with whom Elliott Moore, Deputy Associate Gen. Counsel, and Peter Winkler, Atty., N. L. R. B., Washington, D. C., were on the brief, for respondent.

Arthur L. Fox, II, Washington, D. C., entered an appearance for intervenor.

Before BAZELON, Senior Circuit Judge, and WILKEY and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Petitioner, Consolidated Freightways ("Consolidated"), seeks review of a decision of the National Labor Relations Board ("NLRB" or "Board"), 253 N.L.R.B. No. 137 (1981), ordering it to reinstate a former employee, Charles Hennessey, with full backpay. Because we find that the Board failed to address petitioner's argument that Hennessey's refusal of a prior reinstatement offer tolled petitioner's backpay liability, we remand for further proceedings.

## I. *Factual Background*

Consolidated discharged Hennessey on March 22, 1979, after Hennessey refused to drive a tractor with faulty lights. Hennessey filed a grievance challenging his dis-

charge. His case was brought before the Joint State Committee ("Committee"), an arbitration committee composed of three members of the union and three representatives of the trucking industry.[1] On May 1, 1979, the Committee ordered that Hennessey be reinstated with full seniority and health and welfare benefits, but with a final warning letter and no backpay. Consolidated proceeded to put Hennessey back on "the board" for work. Joint Appendix ("J.A.") 15. Hennessey, however, did not return to work, explaining to a supervisor that he would not return without backpay, Record ("R.") 61.[2]

On July 11, 1979, Hennessey filed a charge with the NLRB asserting that he had been discharged for protected concerted activities in violation of section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). The Administrative Law Judge (ALJ) refused to defer to the Committee's award,[3] noting that the award "required Hennessey to be reinstated but in effect to be under the gun of a warning letter." J.A. 15. Although the ALJ made no specific findings regarding the effect of a warning letter, his conclusion appears to be based on the terms of the labor agreement between Consolidated and Local Union No. 710 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. That agreement provides that no employee may be discharged or suspended before receiving at least one warning notice regarding the particular complaint against him. See Exhibit 6C–5 at 79–80. The ALJ concluded that a reinstatement offer conditioned on receipt of such a letter failed to remedy the alleged unfair labor practice and that, consequently, the Board need not defer to the arbitrator's award.[4]

On the substantive merits of Hennessey's charge, the ALJ found that Hennessey's refusal to drive the tractor was based on a reasonable belief that to do otherwise would be unsafe under legislatively approved safety standards. Despite the fact that Hennessey was acting alone, the ALJ concluded that absent any evidence that other employees disavowed Hennessey's ac-

---

1. The parties to this action stipulated that the "entire grievance and arbitration procedure was fair and regular in all respects." Joint Appendix (J.A.) 15.

2. This explanation came several days after Hennessey was told that he had his job back. According to the ALJ's findings, the union steward spoke to Hennessey immediately after the arbitrator rendered its decision, explaining that he could probably resume work that same night. J.A. 15; see Record ("R.") at 187. Hennessey's testimony, however, indicates that he was somewhat confused about when he could return to work. Although he received two phone calls to return to work between May 1, 1979, the date of the arbitrator's award, and May 4, 1979, Hennessey testified that he expected to receive "something in writing stating [that he] had been reinstated." R. 61. When the Operations Manager, Charles Schmalz, phoned Hennessey on May 4 to ask him if he was planning to return to work, this confusion was cleared up. But when asked whether he would resume work, Hennessey stated that he would not, explaining that "under the conditions that I didn't get the money that I deserved . . . I didn't see that I could come back to work." R. 61. Hennessey testified that he then agreed to send in a letter of resignation, but never did so. R. 61. Consolidated subsequently sent Hennessey a letter acknowledging

his resignation, to which Hennessey did not respond. R. 262.

3. The Board's policy of deference to arbitration awards was announced in Spielberg Mfg. Co., 112 N.L.R.B. 1080 (1955). Under Spielberg, deference to arbitration awards is justified if three criteria are satisfied: (1) fair and regular arbitral proceedings; (2) the parties agree to be bound by the arbitral award; and (3) the award is not clearly repugnant to the National Labor Relations Act. We have added a fourth requirement: that the statutory issue be congruent with the contractual issue, so that a resolution of one is a resolution of both. See Banyard v. N.L.R.B., 505 F.2d 342, 348 (D.C. Cir.1974).

4. The ALJ suggested that his decision not to defer to the arbitrator's award was based, in part, on its failure to include backpay. J.A. 15. On appeal, the Board agreed that the warning letter placed an invalid condition on reinstatement, but reaffirmed its previous holding that an offer of reinstatement is valid even if it fails to include backpay. J.A. 21. Since we find that the Board should have considered Hennessey's reasons for rejecting Consolidated's offer, we do not reach the question whether the offer was in fact conditional.

tions, Hennessey's conduct constituted protected concerted activity,[5] J.A. 13, and his discharge was therefore a violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). J.A. 16. As a remedy, the ALJ ordered that Hennessey be reinstated with full backpay up to the date of a valid offer of reinstatement. J.A. 13. Consolidated appealed to the Board, arguing that its offer of reinstatement following the arbitrator's award tolled its backpay liability and discharged its obligation to offer Hennessey reinstatement. The Board sustained the ALJ's order.[6]

## II. *Analysis*

Consolidated does not challenge the Board's finding that it violated § 8(a)(1) by discharging Hennessey, Brief for Petitioner 25; nor does it challenge the Board's refusal to defer to the arbitrator's award. *Id.* Instead, Consolidated argues that by offering Hennessey reinstatement in accordance with the terms of the arbitrator's decision it discharged its legal obligation and stopped the accumulation of backpay liability. In addition, Consolidated argues that since Hennessey refused reinstatement for an admittedly invalid reason (the denial of backpay), Hennessey is entitled to neither a second offer of reinstatement nor backpay which might otherwise have accrued after that refusal. In response, the Board argues that Consolidated's offer of reinstatement was invalid because it was conditioned on accepting a final warning letter. Such a letter, it contends, would have subjected Hennessey to continued discrimination for exercising protected rights. Since this offer was invalid, the Board further argues that there is no need to inquire into Hennessey's reasons for refusing to accept it. Finally, the Board contends that the question whether Hennessey refused reinstatement for invalid reasons was not raised before the Board and therefore cannot be raised on appeal.

## A. *The Issues Before the Board*

■■ As an initial matter, we must consider whether Consolidated's argument that Hennessey improperly refused reinstatement is barred by section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e). Section 10(e) provides that:

> No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

29 U.S.C. § 160(e). This section furthers "the salutary policy ... of affording the Board opportunity to consider on the merits questions to be urged on review of its order." *Marshall Field & Co. v. N.L.R.B.*, 318 U.S. 253, 256, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943). Cases interpreting section 10(e) look to whether a party's exceptions are sufficiently specific to apprise the Board that an issue might be pursued on appeal. Thus, a generalized objection to " 'each and every recommendation' " of an ALJ lacks the particularity needed to preserve objections to the Board's decisions. *Id.* at 255, 63 S.Ct. at 586; *see also N.L.R.B. v. Seven Up Bottling Co.*, 344 U.S. 344, 350, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953) (objection to trial examiner's recommendation as unsupported by evidence and contrary to law does not provide adequate notice). Similarly, a party who has limited his objections before the Board to one issue will not be allowed to raise a different issue on appeal. *See Dallas General Drivers v. N.L.R.B.*, 389 F.2d 553, 555 (D.C.Cir.1968) (union could not attack standard by which trial examiner determined whether to order reinstatement

---

**5.** Consolidated suggests that our recent decision in *Kohls v. N.L.R.B.*, 629 F.2d 173 (D.C. Cir.1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1390, 67 L.Ed.2d 363 (1981), draws into question the ALJ's determination that Hennessey was engaged in protected concerted activity. Since Consolidated did not take exception to this determination in its appeal to the Board,

this question is not before us. *See* 29 U.S.C. § 160(e).

**6.** The Board noted that Consolidated did not take exception to the ALJ's refusal to defer to the arbitrator's award or to his ruling that Consolidated had committed an unfair labor practice by discharging Hennessey for engaging in protected concerted activity. J.A. 20.

when objections before the Board were limited to issue of whether employees had been discharged discriminatorily). But when the issues implicated by an imprecisely drafted objection are made evident by the context in which it is raised, section 10(e) does not shield the Board's resolution of those issues from review. *See May Department Stores Co. v. N.L.R.B.*, 326 U.S. 376, 386 n.5, 66 S.Ct. 203, 209, 90 L.Ed. 145 (1945) (vague exception to paragraph including cease and desist order as "not supported or justified by the record" sufficient to preserve issue of the proper scope of that order); *N.L.R.B. v. Blake Construction Co.*, 663 F.2d 272 (D.C.Cir. 1981) (objections regarding scope of complaint, substantiality of proof and ALJ's conduct of proceeding adequate to preserve due process objections); *Florence Printing Co. v. N.L.R.B.*, 376 F.2d 216, 222 (4th Cir. 1967), *cert. denied*, 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967) (objection to sufficiency of proof preserved objection to placement of the burden of proof). In each case, the critical inquiry is whether the objections made before the Board were adequate to put the Board on notice that the issue might be pursued on appeal.[7]

◼ In this case, we find that Consolidated's objections before the Board were sufficient to permit it to argue on appeal that Hennessey's improper grounds for refusing reinstatement relieved Consolidated of any obligation to make a subsequent reinstatement offer and, correlatively, tolled Consolidated's backpay liability. In its exceptions to the ALJ's recommendations, Consolidat-ed specifically objected to his failure to find "[t]hat the Charging Party refused the May 1 1979 offer of reinstatement *because* it did not include an offer of backpay. . . ." Respondent's Exceptions to the Decision and Recommended Order of Administrative Law Judge Dated July 30, 1980 3 (emphasis added). In addition, Consolidated discussed Hennessey's grounds for refusing the reinstatement offer in its brief to the Board. It argued that "the fact that the warning letter did not enter into Hennessey's mind when he rejected [Consolidated's] unconditional offer of reinstatement" was "of great significance," and that it was "anomalous" for the ALJ to "void an otherwise valid offer of reinstatement because of what he perceived as a 'condition' to reinstatement when that alleged 'condition' (the letter) never entered the mind of the Charging Party when he rejected the offer." *See* Respondent's Brief in Support of its Exceptions to the Decision and Recommended Order of the Administrative Law Judge dated July 30, 1980 16–17.

The Board argues that this discussion was insufficient to satisfy section 10(e) because it appeared as part of Consolidated's argument that its offer was unconditional and was not accompanied by citations to any of the authorities that Consolidated is relying on in this appeal. Brief for Respondent 23. The General Counsel's own brief, however, set the issue of Hennessey's grounds for refusal in the proper context. The General Counsel argued that "the fact that Hennessey declined the offer [should not] relieve

7. The close factual inquiry required by this standard is illustrated by our decision in *Burinskas v. N.L.R.B.*, 357 F.2d 822 (D.C.Cir. 1966). The Board, following remand from this court, had set aside an earlier order and adopted the trial examiner's original recommendations. These recommendations included ordering the employer to reinstate discharged employees with full backpay. The employer then appealed to this court, arguing that its backpay liability should be tolled for the time between the Board's two decisions. The Board countered by arguing, *inter alia*, that the employer had failed to make such a tolling argument before the Board, and was therefore barred from so arguing on appeal. In rejecting the Board's argument, this court first noted that the employer had objected to "the remedy" proposed by the trial examiner in its original objections to the Board. We then turned to the setting in which the Board approved that remedy and observed that there were a number of then recent Board decisions regarding the propriety of tolling backpay liability between inconsistent Board decisions. Finally, we concluded that it was "more likely than not that the Board, with its expert sensitivities alerted by some considerable past familiarity with the tolling issue in this context of a change in litigating fortunes took [the] more limited [backpay] objection to be comprehended within the broader exception." *Id.* at 825. We also noted that the Board's compliance officer had addressed the tolling question in a letter to the employer following the Board's second decision. *Id.* at 825–26.

[Consolidated] of its obligation to tender a valid offer of reinstatement." Answering Brief in Response to Respondent's Exceptions to the Decision and Recommended Order of Administrative Law Judge Dated July 30, 1980 6–7. He then proceeded to quote a recent Board opinion in which the Board ruled that an employer who had been ordered to reinstate certain employees was not excused from that order by letters from these employees " 'to the effect that they did not wish to return to [his] employ.' " *Id.* at 7 (*quoting Leroy W. Craw*, 224 N.L.R.B. 241, 242 (1979), enf'd, 622 F.2d 579 (3d Cir. 1980)). In addition, the question whether Hennessey's grounds for refusing Consolidated's offer have any independent legal significance was addressed by the ALJ who stated that:

> Having discharged Hennessey for unlawful reasons, it was and is Respondent's responsibility to remedy the unfair labor practices. The facts indicate that Hennessey made statements indicating that his reason for not going back to work was the lack of backpay in the award. Respondent's liability to reinstate Hennessey, however, continues until a proper offer of reinstatement is made.

J.A. 16. In the light of both Consolidated's emphasis on the significance of Hennessey's grounds for refusing Consolidated's offer, and the ALJ and General Counsel's arguments that those grounds were of no importance to the disposition of this case, we find that the Board had adequate notice of the issue raised here on appeal.

### B. Hennessey's Refusal of Consolidated's Offer

Although the question whether Hennessey improperly refused an offer of reinstatement was before the Board, the Board did not address that question in its opinion, relying instead on the findings and conclusions of the ALJ.[8] The ALJ, however, had simply assumed that Hennessey's reasons

for refusing Consolidated's offer were irrelevant to the determination of Consolidated's backpay liability. Consolidated argues that this assumption is not in keeping with Board precedent and that by failing to distinguish or overrule cases that require an inquiry into an employee's grounds for refusing reinstatement, the Board has acted arbitrarily. Because we find that the Board's policy as to unjustified refusals of reinstatement offers remains unexplained, we remand this issue to the Board to reconsider its opinion.

In stating that Hennessey's reasons for not going back to work were of no importance, the ALJ failed to take account of Board precedent that emphasizes the actual reasons why an employee refuses an offer of reinstatement even when the validity of the offer itself is challenged. In *Research Designing Service, Inc.*, 141 N.L.R.B. 211 (1963), for example, an employee who had been unlawfully discharged refused an offer of reinstatement because of the possibility of being laid off once again. *Id.* at 224. The trial examiner nonetheless ordered that the employee be reinstated with full backpay since, had he accepted the offer of reinstatement, he would not have been returned to his former status but would rather have been treated as a new employee for seniority and vacation pay purposes. *Id.* at 230. In reversing this ruling, the Board stressed that the employee "refused the offer of reinstatement *for other reasons.*" *Id.* at 216 (emphasis in original). The Board therefore ruled that the employer's liability for backpay was tolled by the discharged employee's refusal of an offer of reinstatement.[9] Similarly, in *L. Ronney & Sons Furniture Manufacturing Co.*, 97 N.L.R.B. 891 (1951), enf'd as modified, 206 F.2d 730 (9th Cir. 1953), cert. denied, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954), the Board tolled an employer's back-

---

**8.** *See* p. 9 *supra.*

**9.** The Board also reversed the trial examiner's order with regard to another employee who had refused reinstatement because "he was working longer hours and making more money

at his current job." Research Designing Service, Inc., 141 N.L.R.B. at 216. The trial examiner had not made any specific findings regarding the latter employee's reasons for refusing reinstatement.

pay liability for a discharged employee who refused reinstatement because she was working at another job.[10] The Board noted that the reinstatement offer was invalid because it was subject to an illegal union-security provision. It nonetheless tolled the employer's backpay liability because it "appear[ed] that [the discharged employee] would not have accepted [the employer's] offer, even had it been unconditional." *Id.* at 892. Other cases pursue this same inquiry into the reasons why a discharged employee rejected an offer of employment, holding that an employer's backpay liability is tolled when an employee rejects an offer of reinstatement without knowledge of the conditionality of the offer. *See, e.g., Hribar Trucking, Inc.*, 166 N.L.R.B. 745, 756 n.19 (1967), *modified on other grounds*, 406 F.2d 854 (7th Cir. 1969); *Eastern Die Co.*, 142 N.L.R.B. 601, 604 (1963), *enf'd*, 340 F.2d 607 (1st Cir. 1965), *cert. denied*, 381 U.S. 951, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965); *Ekco Products Co.*, 117 N.L.R.B. 137, 150 (1957).[11] In each case, the issue is whether the evidence clearly establishes that the employee would have turned down the offer of reinstatement even if it had not contained the invalid condition. *See, e.g., Atlantic Maintenance Co.*, 134 N.L.R.B. 1328, 1329 (1961), *enf'd*, 305 F.2d 604 (3d Cir. 1962); *id.* at 1329 n.1 (Member Rodgers, dissenting).

In ignoring the issue of Hennessey's reasons for declining Consolidated's offer, the Board may have relied on a recent case cited in the General Counsel's brief. Brief to the National Labor Relations Board In Answer To Respondent's Exceptions Thereto 7. The question in *Leroy W. Craw*, 244 N.L.R.B. 241 (1979), *enf'd*, 622 F.2d 579 (3d Cir. 1980) was whether a conditional reinstatement offer should be deemed to comply with an order of the Board [12] to reinstate employees who had engaged in an unfair labor practice strike when the employees either failed to respond to the offer or refused it for other reasons. The employer had sent out letters offering striking employees reinstatement, but indicating that returning employees would be subject to physical examinations and would only be paid at a substantially equivalent rate to the one they had originally earned. The Board found that both of these conditions were invalid—the physical examinations because they treated returning employees as

---

**10.** With regard to another employee, the Board in *L. Ronney* found that there was sufficient evidence that he would have accepted the employer's offer had it not been conditional. *L. Ronney & Sons Furniture Mfg. Co.*, 97 N.L.R.B. at 893. In support of this ruling, the Board emphasized the employee's "express awareness of the conditional nature of the . . . reinstatement offer." On appeal, the Ninth Circuit found that this portion of the Board's order was not supported by substantial evidence. *N.L.R.B. v. L. Ronney & Sons Furniture Mfg. Co.*, 206 F.2d 730, 737–38 (9th Cir. 1953), *cert. denied*, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954). Concluding that the "evidence as a whole is inconsistent with the conclusion that [the employee] refused employment on account of the implicit condition in the offer," the court ruled that the employee was only entitled to backpay up until the offer of reinstatement. *Id.* at 738.

**11.** Cases involving time conditions also support an inquiry into the employee's reasons for rejecting an offer of reinstatement. Time conditions on acceptance are somewhat different from conditions that go to the nature of an employee's work because they do not prevent the employee, if he accepts in a timely manner, from being made whole. Time conditions are therefore not really conditions on the offer, but rather limitations on the time for acceptance. As such, they must comport with the employee's "fundamental right to a reasonable time to consider whether to return." *Penco Enterprises, Inc.*, 216 N.L.R.B. 734, 734–35 (1975). *Accord, Murray Products, Inc.*, 228 N.L.R.B. 268, 268 (1977), *enf'd*, 584 F.2d 934 (9th Cir. 1978). Nonetheless, the inquiry in such cases is similar to that with invalid conditions on employment—that is, courts look to the reasons why an employee failed to accept the offer of reinstatement within the time imposed by the employer before inquiring into whether that time condition is unreasonable. *See N.L.R.B. v. Betts Baking Co.*, 428 F.2d 156, 158–59 (10th Cir. 1970); *N.L.R.B. v. Harrah's Club*, 403 F.2d 865, 871 (9th Cir. 1968).

**12.** In *Leroy W. Craw*, 227 N.L.R.B. 601 (1976), *modified on other grounds*, 565 F.2d 1267 (3d Cir. 1977), the Board had held that a company had engaged in an unfair labor practice by not reinstating unfair labor practice strikers when they unconditionally applied for reinstatement. *Id.* at 609. The Board had therefore ordered the company to offer those employees immediate reinstatement.

new employees; and the rate of pay because it failed to include increases in wages that the employees would have received had the employer accepted their offers to return to work at the end of the strike. *Id.* at 242. After determining that the employer's offers of reinstatement were inadequate, the ALJ proceeded to consider whether the employer's backpay liability should be tolled in the case of employees who rejected those offers. He concluded that backpay was not tolled, stating that: "[the discharged employees'] replies to the effect that they did not wish to return to Respondent's employ do not obviate the need for Respondent to extend to them an unconditional offer of reinstatement, nor do their replies terminate their backpay periods." [13]

Although *Leroy W. Craw* could signal a change of Board policy abandoning any inquiry into the reasons why a conditional offer is refused, the case might also be reconcilable with earlier Board precedent. The offer in *Leroy W. Craw* plainly stated its invalid conditions and employees who rejected that offer because they had procured "better jobs" might well have gone back to the company if faced with a valid offer. Thus, the ALJ's conclusion may be seen as consistent with an inquiry into whether an employee rejected an offer of reinstatement for reasons other than its invalid conditions.

■■ In contrast, Hennessey's refusal of Consolidated's offer would seem an appropriate case for applying the rule of *Research Designing* and *L. Ronney*. The testimony regarding Hennessey's reason for refusing Consolidated's offer was uncontradicted; he would not return without backpay. R. 61. That reason was not valid under Board precedent because it violated Hennessey's duty to mitigate his damages. *See National Screen Products Co.,* 147 N.L.R.B. 746, 748 (1964). On the other hand, while Hennessey was present when the presumably invalid condition on his reinstatement—the final warning letter—was announced, R. 99, 184, Hennessey testified that he had no recollection of being told about that condition, R. 100, and did not learn about it until five weeks later.[14] *Id.* There is therefore no reason to believe that the invalid condition on Consolidated's offer even entered Hennessey's mind when he decided to turn down the offer of reinstatement. Looking to the actual reasons why Consolidated's offer was refused seems especially appropriate when there is every indication that Consolidated acted in good faith.[15] Unlike the employer in *Leroy W.*

**13.** On appeal, the Board adopted the findings and conclusions of the Administrative Law Judge. *See Leroy W. Craw,* 244 N.L.R.B. at 241.

**14.** This testimony was given during questioning by the ALJ:

Judge Stone: . . . As best you can [,] tell me exactly what [the Joint State Committee] told you the results of the grievance hearing were?

Hennessey: Well, sir, they told me that the discharge had been overturned. That the pay claim had been denied. The company was responsible to pick up my pension and health and welfare benefits with full seniority rights.

Judge Stone: Now, was there any thing else said to you at all?

Hennessey: No, sir, not that I remember.

Judge Stone: Did they give you anything in writing?

Hennessey: No, sir. I picked up a copy of the results of the grievance about five weeks later. And it was at that time when I finally realized there had also been a thing where the discharge had been reduced to a final warning letter.

Judge Stone: . . . Now, did you know at the time the grievance hearing was over, when you were orally told, did you know at that time there was anything about a warning?

Hennessey: No, sir, I did not.

R. 99–100.

The ALJ did not make any findings regarding Hennessey's awareness of the final warning letter, presumably because of his conclusion that Hennessey's reason for refusing Consolidated's offer of reinstatement were of no importance.

**15.** Consolidated also argues that its good faith reliance on the arbitration award provides an independent basis for overturning the Board's decision. It suggests that even in cases in which the Board properly refuses to defer to an arbitrator's award, the Board should nonetheless look to the award to determine the interim rights of the parties. Thus, it argues, Hennessey should have been required to accept employment as conditioned by the arbitrator's decree, even though the Board ultimately ruled

*Craw*, who made a conditional offer of reinstatement in violation of an express order from the Board, Consolidated offered Hennessey reinstatement in accordance with the terms of the arbitrator's decree; no Board precedent at that juncture specifically held that this offer would be inadequate; and Hennessey gave no indication that the warning letter bore any significance in his decision not to return to work. It was only after Hennessey filed his charge with the Board, which was several months after the arbitrator's decision, that Consolidated received notice that the warning letter presented any problem at all.

■ In view of the Board's failure to reconcile its decision in this case with its precedent, and its failure to explain its reasons for abandoning any inquiry into the reasons why a conditional offer is refused, we have no choice but to remand this case to the Board to explicate the circumstances,

if any, under which an inquiry into whether an employee would have rejected a valid offer of reinstatement is proper.[16] *See generally Road Sprinkler Fitters Local No. 669 v. N.L.R.B.*, 600 F.2d 918, 923 (D.C.Cir. 1979); *N.L.R.B. v. Madison Courier, Inc.*, 472 F.2d 1307, 1326 (D.C.Cir.1972); *Burinskas v. N.L.R.B.*, 357 F.2d 822, 827 (D.C.Cir. 1966).

*Remanded.*

that the arbitrator's award contained an illegal condition.

Because we are remanding this case to the Board to reconsider the significance of Hennessey's motives for refusing Consolidated's offer, we need not reach the question whether Consolidated's good faith reliance on the arbitrator's decree, in itself, would be sufficient to toll backpay liability. We note, however, that resolution of this question depends on whether the Board could properly further the strong national policy in favor of private settlement of labor disputes without abdicating its responsibility to remedy violations of national labor law. *See Local Union No. 2188, International Bth'd of Elec. Workers v. N.L.R.B.*, 494 F.2d 1087, 1091 (D.C.Cir. *cert. denied*, 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); *Associated Press v. N.L. R.B.*, 492 F.2d 662, 667 (D.C.Cir.1974). Thus, the Board might well reach different conclusions regarding the employer's right to rely on an arbitrator's decree pending a Board decision on a charged unfair labor practice depending on the nature of the arbitrator's decision and the specific circumstances following its issuance. In this case, among the significant factors the Board would have to consider are (1) the arbitrator ordered reinstatement with a warning letter, (2) Consolidated conformed its offer to the terms of the decree and (3) Hennessey waited two and a half months after the decree before filing his charge with the Board. Although Hennessey filed his charge within the statutory period of six months, and the Board ruled that the offer was improperly conditioned, a more refined consideration of the policy in favor of private settlement might lead the

Board to find that Consolidated's good faith reliance on the arbitrator's award should work to suspend its backpay liability. Different considerations would of course be implicated if the arbitrator's award had been plainly conditioned on a surrender of the employee's statutory rights, or if the arbitrator had upheld the discharge, thereby requiring no reinstatement offer at all. In these cases, the Board might find that allowing the arbitration award to reduce the remedy received by a wrongfully discharged employee would seriously compromise the remedial purposes of the Act.

16. We are especially hesitant to decide this question without the benefit of the Board's reasoning in the light of contradictory signals from the Board regarding the analogous situation in which an employer who has made no reinstatement offer at all seeks to reduce his backpay liability by proving that an offer would have been rejected. *Compare Roadway Express, Inc.*, 254 N.L.R.B. No. 26, 48–49 (1981) (evidence that employee intended to quit does not obviate need for a valid offer of reinstatement) *and Lyman Steel Co.*, 246 N.L.R.B. 712, 715 (1979) (employer must make a genuine offer of reinstatement to toll backpay liability) *with Marlene Industries Corp.*, 255 N.L.R.B. No. 192, 14 n.12 (1981) (even in the absence of an offer of reinstatement, employer may reduce liability by demonstrating that employee would not have accepted the offer if made) *and Abilities & Goodwill, Inc.*, 241 N.L.R.B. 27, 27 n.5, *enf. denied on other grounds*, 612 F.2d 6 (1st Cir. 1979) (same).