**CONSOLIDATED FREIGHTWAYS, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–1630.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1989.

Decided Dec. 29, 1989.

Jeffrey L. Madoff, with whom James D. Shepherd, Chicago, Ill., and Fred S. Sommer, Washington, D.C., were on the brief, for petitioner.

Charles Donnelly, Atty., National Labor Relations Board ("NLRB"), of the Bar of the Supreme Court of Texas, pro hac vice, by special leave of court, with whom Aileen A. Armstrong, Deputy Associate Gen. Counsel, NLRB, and William M. Bernstein, Atty., NLRB, were on the brief, for respondent. Peter D. Winkler, Atty., NLRB, Washington, D.C., also entered an appearance for respondent.

Before WALD, Chief Judge, and BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Consolidated Freightways petitions for review of a supplemental decision of the National Labor Relations Board affirming an earlier Board decision that ordered Consolidated to reinstate a former employee with full backpay because its previous reinstatement offer had been conditional and therefore invalid. On review of the original decision, we noted the Board's failure to reconcile its decision with its own precedent and remanded with instructions that the Board explain the circumstances, if any, that would permit an inquiry into an employee's reasons for refusing a reinstatement offer. *Consolidated Freightways v. NLRB*, 669 F.2d 790 (D.C.Cir.1981).

Consolidated contends that the Board has failed to comply with our remand instructions. Although we find the Board's treatment of its precedent unconvincing, we hold that the Board has complied with our remand by announcing a new rule: An employer's reinstatement offer must be unconditional on its face in order to terminate the accrual of backpay liability, regardless of the employee's reasons for declining the offer. We also hold that, as a matter of equity, Consolidated is liable to its former employee for backpay only from the date the Administrative Law Judge articulated the new rule.

## I. BACKGROUND

### A. Factual Background and the Board's First Decision

Consolidated Freightways is engaged in the business of intrastate and interstate transportation of goods and materials by truck. Charles Hennessey was hired by Consolidated as a truck driver in 1977. Two years later, on March 22, 1979, Consolidated discharged Hennessey after he refused to drive a tractor that he believed to be unsafe. Hennessey filed a grievance challenging his discharge and requesting reinstatement with full backpay and health and welfare benefits. On May 1, 1979, the grievance was heard before the Joint State

Committee, an arbitration panel established under the collective bargaining agreement between Consolidated and Hennessey's union. *Consolidated Freightways*, 253 N.L.R.B. 988, 990–94 (1981). The parties later stipulated that Hennessey's grievance was covered by the collective bargaining agreement; that Consolidated, the union, and Hennessey had agreed to be bound by the Committee's decision; and that the entire grievance and arbitration procedure was fair and regular in all respects. *Id.* at 994.

After hearing the arguments of the parties, the Committee ordered that Hennessey be reinstated to his former job with full seniority and benefits, but without backpay, and that a "final warning letter" be placed in Hennessey's file. *Id.* Under the terms of the collective bargaining agreement, Consolidated may not suspend or discharge an employee until at least one warning notice of the particular complaint at issue has been given (except for drug and alcohol use and certain other causes for discharge). Warning letters remain in effect for a maximum of nine months. Thus if he had accepted the offer, Hennessey would have been subject, for a limited period, to immediate discharge if he again engaged in the conduct for which he was first dismissed. Hennessey did not learn about the warning letter until well after he had refused an offer of reinstatement from Consolidated, explaining that he would not return without backpay.

On July 11, 1979, Hennessey filed an unfair labor practice charge with the NLRB. After a hearing, an Administrative Law Judge ("ALJ") found that Consolidated had discharged Hennessey for engaging in protected activity in violation of section 8(a)(1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1) (1982). 253 N.L.R.B. at 995. The ALJ declined to defer to the arbitration award because by putting Hennessey "under the gun of a 'warning letter,' " the award "fails to remedy the alleged unfair labor practices." *Id.* at 994. The ALJ then determined that Consolidated's obligation to reinstate Hennessey "continues until a proper offer of reinstatement is made." *Id.* Asserting that the accrual of backpay liability is not

terminated until a valid, unconditional reinstatement offer is made, the ALJ ordered that Hennessey be offered unconditional reinstatement with full backpay. *Id.* at 995.

Consolidated filed exceptions to the ALJ's conclusion that its reinstatement offer was conditional, but not to his finding that Consolidated had engaged in an unfair labor practice or his refusal to defer to the arbitration award. *Id.* at 988 n. 1. In a Decision and Order dated January 5, 1981, the Board agreed that the warning letter had rendered Consolidated's reinstatement offer conditional, and therefore invalid, and affirmed the ALJ's decision. *Id.* at 988.

B. This Court's First Decision

Consolidated petitioned this court for review, arguing that its reinstatement offer was unconditional and thus terminated the accrual of backpay liability. Furthermore, Consolidated claimed that as Hennessey had refused the offer for an admittedly invalid reason (the denial of backpay), he was not entitled to either a second reinstatement offer or accrued backpay. The Board countered that as the offer was conditioned on the issuance of the warning letter, it was invalid; and as it was a nullity, Hennessey's invalid reason for refusing the offer did not toll the accrual of backpay liability.

On December 11, 1981, we remanded the case for reconsideration. *Consolidated Freightways*, 669 F.2d at 798. In our decision, we found that the Board had "failed to take account of Board precedent that emphasizes the actual reasons why an employee refuses an offer of reinstatement even when the validity of the offer itself is challenged." *Id.* at 795–96. We also cited *Research Designing Service, Inc.*, 141 N.L.R.B. 211 (1963), *L. Ronney & Sons Furniture Mfg. Co.*, 97 N.L.R.B. 891 (1951), *enforced as modified*, 206 F.2d 730 (9th Cir. 1953), *cert. denied*, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 425 (1954), and other cases in which the Board had held "that an employer's backpay liability is tolled when an employee rejects an offer of reinstatement

without knowledge of the conditionality of the offer." 669 F.2d at 796.

We acknowledged, however, that the Board might have been relying on a more recent case, *Leroy W. Craw*, 244 N.L.R.B. 241 (1979), *enforced*, 622 F.2d 579 (3d Cir. 1980), which held that an invalid conditional offer of reinstatement did not toll the employer's backpay liability even though the employees had rejected the offer for reasons other than the invalid conditions. 669 F.2d at 796 & n. 12. Faced with potentially conflicting precedent, we observed that *Leroy W. Craw* could either "signal a change of Board policy abandoning any inquiry into the reasons why a conditional offer is refused" or be "reconcilable with earlier Board precedent." *Id.* at 797. We therefore remanded the case to allow the Board "to explicate the circumstances, if any, under which an inquiry into whether an employee would have rejected a valid offer of reinstatement is proper." *Id.* at 798. We did not reach two other questions that had been presented; namely, whether the offer to Hennessey was in fact conditional and whether Consolidated's good faith reliance on the arbitration award would be sufficient in itself to toll backpay liability. *Id.* at 792 n. 4, 798 n. 15.

## C. The Board's Supplemental Decision and Order

Six years later, in July 1988, the Board issued a Supplemental Decision and Order affirming its prior decision. 290 N.L.R.B. No. 85 (July 29, 1988) ("Supplemental Decision"). The Board stated that because Consolidated was required to file the warning letter, its offer "would not have returned [Hennessey] to the position he occupied before the discrimination against him." Accordingly, it was "clearly conditional on its face" and therefore invalid. *Id.* at 4. Under the circumstances, Hennessey was under no obligation to respond. The Board concluded that where an offer is invalid on its face, an employee's reasons for refusing it are irrelevant. *Id.* at 5.

The Board distinguished *Research Designing* and other cases cited by this court on the ground that in each instance the reinstatement offer was facially valid while in the present case "reinstatement was expressly premised on the terms of the arbitration award, which contains the invalid condition." *Id.* Addressing *L. Ronney*, the Board said it could not determine whether the reinstatement offer was valid on its face. But to the extent that the case suggests that the NLRB will examine a wrongfully discharged employee's reasons for declining a facially invalid reinstatement offer, the Board overruled *L. Ronney* and any other similar case, stating that it adhered to its holding in *Leroy W. Craw*. *Id.* at 6.

Finally, the Board reaffirmed its conclusion that the arbitration award, which it found to be "repugnant to the Act," was void and did not warrant deferral. Therefore, Consolidated's offer was judged by the Board's normal standards. As Hennessey had not received "a facially valid offer of reinstatement," the Board concluded that he was entitled to full backpay. *Id.* at 8–9.

## II. Discussion

■ This case concerns the Board's authority under section 10(c) of the Act "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of [the Act]," in the event the Board finds that an employer has engaged in an unfair labor practice. 29 U.S.C. § 160(c) (1982). The Board's remedial authority under this section is extremely broad. Accordingly, its actions are entitled to a high degree of deference by this court, and a remedial order must stand "unless it can be shown that [it] is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *St. Francis Fed'n of Nurses & Health Professionals v. NLRB*, 729 F.2d 844, 849 (D.C. Cir.1984) (quoting *Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)); *see also Fibreboard Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964) (describing remedial power of Board as "a

broad discretionary one, subject to limited judicial review").

### A. Did the Board Act Arbitrarily and Capriciously and Fail to Comply with this Court's Remand Instructions?

■ Consolidated's chief complaint is that the Board acted arbitrarily and capriciously (and failed to comply with this court's instructions on remand) because when it held that Consolidated's offer did not toll the accrual of backpay liability, the Board did not provide a convincing explanation for abandoning the rule established in *Research Designing* and its progeny. Consolidated argues that the Board's attempt to distinguish its precedent was disingenuous at best and that it failed to explain its rationale for abandoning any inquiry into the reasons why an employee has refused a reinstatement offer.

We agree that the Board's attempts to reconcile and distinguish its precedents are unpersuasive. The Board claims that *Research Designing* and the other cases cited by us are distinguishable from the one before us because the offers in those cases appeared to be unconditional and thus were facially valid. Supplemental Decision at 5. Unfortunately, that distinction is nowhere discussed in either *Research Designing* or any of the other cases cited; in fact, in each instance the Board explicitly refers to the employee's perception of the reinstatement offer in determining whether the offer tolled the company's backpay liability. *See Hribar Trucking, Inc.*, 166 N.L.R.B. 745, 756 n. 19 (1967), *enforced in part*, 406 F.2d 854 (7th Cir.1969); *Eastern Die Co.*, 142 N.L.R.B. 601, 604 (1963), *enforced*, 340 F.2d 607 (1st Cir.), *cert. denied*, 381 U.S. 951, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965); *Ekco Prods. Co.*, 117 N.L.R.B. 137, 150, 152 (1957).

Moreover, the Board made no attempt to reconcile its decision in *L. Ronney*. Faced with a case that could not readily be distinguished from the one before us, the Board simply overruled *L. Ronney* and similar cases to the extent that they support an inquiry into an employee's reasons for declining a facially conditional offer. The

Board explained only that it would follow its previous decision in *Leroy W. Craw*. Supplemental Decision at 6.

While we reject the Board's attempts at reconciliation, we conclude that in reality it has simply enunciated a new rule based on its earlier decision in *Leroy W. Craw*—which (as Consolidated conceded at oral argument) the Board has the authority to do. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974) (Board has "informed discretion" to "announc[e] new principles in an adjudicative proceeding."). Accordingly, we now assess the adequacy of the reasons given by the Board in support of its new policy.

As the Board has explained, reinstatement is "a public right granted to vindicate the law against one who has broken it." *Lipman Bros., Inc.*, 164 N.L.R.B. 850, 853 (1967). Its purpose is to restore a wrongfully discharged employee to the same situation he would have been in had he not been discharged. *Id.; see also NLRB v. Rutter–Rex Mfg. Co.*, 396 U.S. 258, 264–65, 90 S.Ct. 417, 420–21, 24 L.Ed.2d 405 (1969). To that end, the Board has long held that an offer of reinstatement must be "firm, clear, and unconditional. Only when a proper offer is made and unequivocally rejected by the employee is the employer relieved of his statutory duty to reinstate." *Lipman Bros., Inc.*, 164 N.L.R.B. at 853.

In reaffirming its earlier order, the Board reasoned that a conditional reinstatement offer may not be recognized for any purpose because to do so would allow the employer to continue to discipline the wronged employee for having engaged in a protected activity. As the equities lie with the wrongfully discharged employee, the Board concluded that it is

incumbent on the Respondent to extend to the injured employee a facially valid offer of reinstatement before the burden shifts to the injured employee to accept or reject the offer. Anything short of this is inconsistent with the statutory policy that a transgressor should bear

the burden of the consequences stemming from its illegal acts.

Supplemental Decision at 6–7.

In challenging the Board's position, Consolidated cites the undisputed rule that discharged employees must accept reinstatement offers without backpay in order to preserve the employer's right to litigate the lawfulness of the discharge and argues that it should be applied in this case. *See National Screen Prods. Co.*, 147 N.L.R.B. 746, 748 (1964). That rule recognizes that if an employer were required to offer an employee reinstatement with backpay prior to an adjudication on the merits of the discharge, as a practical matter the employer might not be able to recover the backpay in the event of a favorable decision. *See id.* An employee, on the other hand, would lose little by returning to work without the receipt of accrued backpay, for he would be entitled to recoup it if he ultimately were to prevail on the merits. The rule, however, is predicated on a valid offer of reinstatement because restoring the employee to his *status quo ante* is, in essence, the price the employer is required to pay in exchange for the employee's agreement to return to work before the question of backpay liability is finally settled. As Consolidated's offer would not return Hennessey to the position he occupied before his wrongful discharge, Consolidated has failed to meet its end of the implicit bargain and, therefore, has no claim to its benefits.

In sum, we find that the Board acted well within its authority in enunciating the new rule and that it adequately explained how the rule advances the policies of the Act. Accordingly, we reject Consolidated's contention that the Board acted arbitrarily and capriciously in finding that its backpay liability had not been tolled.

**B. Was Consolidated's Offer Conditional and Therefore Invalid?**

■ Consolidated also contends that even assuming the propriety of the new rule, its offer to reinstate Hennessey was unconditional, regardless of the warning letter. Consolidated asserts that had Hennessey accepted the offer, he would have been placed in exactly the same position he had held prior to his discharge, including full seniority rights and benefits, because the warning letter would have had no discernible impact upon his post-reinstatement employment status. More specifically, Consolidated maintains that Hennessey would have continued to have recourse to the grievance and arbitration procedures in the event of discharge and that, in any event, warning letters are common in the industry. Consolidated then argues that as any adverse effect of the letter is purely speculative, Hennessey should not be excused from his general obligation to mitigate damages by accepting the offer of reinstatement.

Consolidated's suggestion that its offer would have restored the *status quo ante* borders on the frivolous. The filing of the warning letter subjected Hennessey to the risk of summary discharge during a nine-month period, and it is irrelevant that he would have had recourse to grievance and arbitration procedures. Even if one were to concede that the requirement that the letter be filed did not impose an onerous condition, the treatment of the offer as unconditional would be contrary to the Supreme Court's recognition that "[m]aking [employees] whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941). "Whole" means whole.

**C. Did Consolidated's Offer Toll its Backpay Liability Because Made in Good Faith Reliance on a Binding Arbitration Award?**

■ Consolidated next argues that its good faith reliance on and compliance with a final and binding arbitration award should provide a separate basis for tolling its backpay liability. As Consolidated points out, in our opinion remanding the case we did not reach that argument but nevertheless observed that "resolution of this question depends on whether the Board could properly further the strong

national policy in favor of private settlement of labor disputes without abdicating its responsibility to remedy violations of national labor law." *Consolidated Freightways*, 669 F.2d at 798 n. 15. We noted that the Board's determination of whether Consolidated's reliance on the arbitration award should toll its backpay liability could turn on the nature of the arbitration committee's decision and the specific circumstances following its issuance, including the facts that "(1) the arbitrator ordered reinstatement with a warning letter, (2) Consolidated conformed its offer to the terms of the decree and (3) Hennessey waited two and a half months after the decree before filing his charge with the Board." *Id.*

We conclude that the Board acted within its discretion in declining to toll the liability. *See* Supplemental Decision at 7–9. Although the Board may defer to an arbitration award to encourage voluntary settlement of labor disputes and promote collective bargaining, it need not do so where the award is "clearly repugnant to the purposes and policies of the Act." *E.g., Hribar Trucking, Inc.*, 166 N.L.R.B. at 754 (citations omitted). As the Board noted, it had found (in agreement with the ALJ) that the arbitration award was repugnant to the Act and accordingly not entitled to deference. The question of deference, of course, is not before us as Consolidated did not take exception to the ALJ's refusal to defer to the arbitration award. *See Consolidated Freightways*, 669 F.2d at 793 n. 6; 29 U.S.C. § 160(e) (1982). Yet, as the Board pointed out, for it to toll Consolidated's backpay obligation because of its compliance with a repugnant award would be tantamount to deference. *See* Supplemental Decision at 8. Consolidated contends that "the strong national policy in favor of private settlement of labor disputes" alone justifies terminating its accrual of backpay liability. The Board, however, could reasonably take the position—even in light of the particular circumstances surrounding the arbitration award—that if it allowed an employee to be penalized for engaging in protected conduct, it would be "abdicating its responsibility to remedy violations of

national labor law." *See* 669 F.2d at 798 n. 15.

### D. Did the Board Permissibly Apply its Rule Retroactively?

■■■ Having concluded that the Board acted within its discretion in enunciating the new rule, that Consolidated's offer was conditional and thus invalid, and that its good faith compliance with the arbitration order did not excuse it from its obligations under the Act, we must next decide whether the Board's retroactive application of the rule was permissible. As a general principle, new rules announced in agency adjudications may be applied retroactively absent any "manifest injustice." *E.g., Clark–Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C.Cir.1987). In considering the equities, courts generally balance the interests of the parties, taking into account such factors as the degree of hardship they will experience, their justifiable reliance on past practices, and the statutory interest in a retroactive application of the new rule. *See, e.g., id.; Tennessee Gas Pipeline Co. v. FERC*, 606 F.2d 1094, 1115, 1116 n. 77 (D.C.Cir.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Laidlaw Corp. v. NLRB*, 414 F.2d 99, 107 (7th Cir.1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970).

We conclude that the equities in this case support retroactive application of the rule, but only from the date of the ALJ's decision. We find retroactive enforcement of the Board's order warranted because payment of accrued backpay is "a remedy designed to restore, so far as possible, the status quo that would have obtained but for the wrongful act." *Rutter–Rex Mfg. Co.*, 396 U.S. at 265, 90 S.Ct. at 421. Here, it is undisputed that Hennessey was disciplined for engaging in protected conduct. Thus there is a strong statutory interest in awarding him full backpay as a remedy for his wrongful discharge. To hold that a conditional reinstatement offer tolled Consolidated's backpay liability would both penalize Hennessey and allow Consolidated to escape the consequences of its own viola-

tion of the Act. In such circumstances, it is "not arbitrary and capricious for the Board to conclude that complete vindication of employee rights should take precedence over the employer's reliance on prior Board law." *Laidlaw Corp. v. NLRB*, 414 F.2d at 107.

On the other hand, we acknowledge that the new rule represents a substantial departure from long-established practice. Under the prior rule, Consolidated's offer would clearly have tolled its backpay liability because it is beyond question that Hennessey rejected it without knowledge of its conditionality. Moreover, the offer was made in good faith reliance on an arbitration award that Consolidated was contractually obligated to obey and that had been issued in a proceeding that the parties agreed was fair and regular in all respects. Therefore, until the ALJ issued his decision, Consolidated had no reason to question the propriety of its actions. Thereafter, however, Consolidated was on notice that the Board might affirm the new rule, and it could have tolled the accrual of backpay at any time simply by making Hennessey a new, unconditional offer of reinstatement.

### E. Did the Board's Delay in Deciding this Case on Remand Violate the APA and Consolidated's Due Process Rights?

■ Finally, Consolidated argues that the Board's supplemental order should be denied enforcement because of the excessive amount of time (more than six years) that elapsed between our remand and the issuance of the order. According to Consolidated, this "egregious" delay violates section 555(b) of the Administrative Procedure Act, which requires an agency to proceed to conclude a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b) (1982).

In a case involving a lapse of nine years, the Supreme Court held that even a "deplorable" delay does not justify interference with the Board's broad remedial powers, as the "Board is not required to place the consequences of its own delay, even if inordinate, upon wronged employees to the benefit of wrongdoing employers." *Rut-*

*ter–Rex Mfg. Co.*, 396 U.S. at 265, 90 S.Ct. at 421. By refusing to toll Consolidated's backpay liability, the Board reasonably "shifted the cost of the delay" from the employee to the employer. *Cf. id.* at 266, 90 S.Ct. at 421. While we do not condone the Board's extraordinary delay, we conclude that enforcement of its order is appropriate because the remedy fashioned by the Board was well within its discretion, and our failure to enforce it would return the burden to the wrong shoulders.

### III. Conclusion

We hold that the Board acted within its remedial discretion in announcing a new rule designed to require employers who commit unfair labor practices to restore discharged employees to the *status quo ante*. In evaluating the equities of applying this principle retroactively, we conclude that Consolidated's backpay liability should accrue only from the date of the ALJ's decision. Accordingly, the petition for review is granted for the sole purpose of modifying the Board's order in accordance with this opinion, and as so modified, the order is enforced.

*It is so ordered.*