# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 22, 2019     Decided December 31, 2019

No. 18-1300

CONSTELLIUM ROLLED PRODUCTS RAVENSWOOD, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 18-1322

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*Harry I. Johnson III* argued the cause for petitioner. With him on the briefs were *Daniel P. Bordoni* and *David R. Broderdorf*.

*Jared D. Cantor*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Peter B. Robb*, General Counsel, *David Habenstreit*, Acting Deputy Associate General Counsel, and *Julie Brock Broido*, Supervisory Attorney.

Before: TATEL and MILLETT, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: Constellium petitions for review of the National Labor Relations Board's decision that Constellium violated sections 8(a)(1) and (3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) and (3), by suspending and discharging Mr. Andrew "Jack" Williams. The Board has cross-petitioned for enforcement of its order.

The Board's decision was based upon substantial evidence and did not impermissibly depart from precedent without explanation; the Board failed, however, to address the potential conflict between its interpretation of the NLRA and Constellium's obligations under state and federal equal employment opportunity laws. As further explained below, we grant Constellium's petition for review, deny the Board's cross-petition for enforcement, and remand the case to the Board for further proceedings consistent with this opinion.

**I. Background**

From 2006 to 2013, Constellium agreed with its union to assign overtime work by soliciting employees in person or by phone three days in advance and not to discipline employees for failing to work overtime after having volunteered to do so. *Constellium Rolled Products Ravenswood, LLC*, 366 NLRB No. 131, slip op. (July 24, 2018). In April 2013, Constellium unilaterally imposed new overtime procedures. Under the new procedures, overtime sign-up sheets were posted on a bulletin board and employees who volunteered for overtime were required to sign up a week in advance. Some union members

protested the new procedures by refusing to work overtime and by referring to the overtime sign-up sheets as the "whore board."

In October 2013 Williams wrote the words "whore board" at the top of two overtime sign-up sheets. During Constellium's investigation of the incident, Williams admitted to the writing. Constellium suspended Williams "with the intent to discharge him for willfully and deliberately engaging in insulting and harassing conduct." Shortly thereafter, Constellium fired Williams.

An NLRB Administrative Law Judge determined Williams was not engaged in a "course of protected activity" when he wrote "whore board" on the overtime sign-up sheets. The General Counsel of the Board filed exceptions to the ALJ's decision. On review, the Board overturned the ALJ's recommendation based upon its view that "in writing 'whore board,' Williams was engaged in a continuing course of protected activity" related to the overtime boycott and that Williams's conduct was not so egregious as to lose the protection of the Act. In its Decision and Order, the Board did not address Constellium's argument that precluding discipline of Williams would conflict with the Company's obligations to provide a workplace free of sexual harassment under state and federal equal employment opportunity laws. Constellium filed a timely petition for review and the Board cross-applied for enforcement of its order.

## II. Analysis

Constellium makes three arguments on appeal: (1) The Board departed without explanation from its precedent, which Constellium argues treats the defacement of company property

as categorically unprotected;[*] (2) the Board lacked substantial evidence for its finding that Williams was disciplined because of the content of his writing; and (3) the Board failed to address the alleged conflict between its interpretation of the NLRA and the Company's obligations under state and federal equal employment opportunity laws.

Under Section 8(a)(1) of the Act, it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees" exercising their rights under the Act. Section 8(a)(3) makes it an unfair labor practice to discriminate "in regard to hire or tenure of employment … to encourage or discourage membership in any labor organization."

Our review of the Board's decisions is limited, "uphold[ing] the decision of the Board unless it was arbitrary or capricious or contrary to law, and as long as its findings of fact are supported by substantial evidence in the record as a whole." *Oak Harbor Freight Lines, Inc. v. NLRB*, 855 F.3d 436, 440 (D.C. Cir. 2017). The Board's findings of fact are supported by substantial evidence if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Ingredion Inc.*, 930 F.3d 509, 514 (D.C. Cir. 2019) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). The court's standard of review is generally deferential in light of the Board's claim to expertise in the area of labor relations. *Id.* "An unexplained divergence from its precedent would," however, "render a Board decision arbitrary and capricious." *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1074 (D.C. Cir. 2016) (cleaned up).

---

[*] Constellium argued the Board's decision created an affirmative right for employees to deface employer property. Because that argument rests upon the Board's alleged departure from precedent to the contrary, we address it in our analysis of the Company's first argument.

## A. Departure from Board precedent

Recall that the Board held Williams was engaged in a course of protected activity when he wrote "whore board" on the overtime sign-up sheets. Constellium argues the Board thereby departed without explanation, and therefore arbitrarily and capriciously, from the precedent it set in *United Artists*, that defacement of an employer's property "is under no circumstances a protected activity." *United Artists Theatre*, 277 NLRB 115, 127–28 (1985). The Board's insistence it has "never held that employee graffiti is always unprotected" is facially at odds with *United Artists*. 277 NLRB at 128. The Board, however, went on to address the apparent inconsistency, citing a precedent postdating *United Artists* that held defacement of employer property can be protected activity in some circumstances. *Port E. Transfer*, 278 NLRB 890, 894–95 (1986) (holding pro-union graffiti on an employer's restroom wall was protected under the Act). The Board did, moreover, "come to grips," with the conflicting precedent, *NLRB v. CNN Am., Inc.*, 865 F.3d 740, 751 (D.C. Cir. 2017), observing that the ALJ in *United Artists* did not simply apply a per se rule against protecting defacement of the employer's property. The decision "also relied on findings that would be consistent with an *Atlantic Steel* loss-of-protection analysis" to determine whether the employee graffiti was egregious enough to lose the protection of the Act. Thus, the Board did not depart from its own precedent without explanation and, by considering the defacement of company property within the *Atlantic Steel* loss-of-protection framework, did not create any new, unequivocal rights of employees to deface company property.

## B. Substantial evidence

The Board's decision was based upon its conclusion that Constellium "disciplined Williams for the protected content of his writing," rather than for defacing Company property, here noting that the Company "cited his supposed insulting and harassing conduct" when disciplining Williams. Constellium argues that because the Company tolerated other protests of the new overtime procedures, the Board lacked substantial evidence to show the Company fired Williams with discriminatory intent, in violation of Section 8(a)(3). In response, the Board points to a contemporaneous Company document and corresponding testimony that Williams was fired for "willfully and deliberately engaging in insulting and harassing conduct" on the job to show that a reasonable factfinder could conclude Constellium fired Williams for the NLRA "protected content of his writing" and not simply for defacing Company property.

"We review the Board's findings of fact for substantial evidence, which … requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable factfinder." *Alden Leeds, Inc. v. NLRB*, 812 F.3d 159, 165 (D.C. Cir. 2016) (quotation omitted). Under this deferential standard of review, Constellium's arguments are unavailing for two reasons.

First, as the Company itself observes, the Board "never applied a *Wright Line* analysis," which would require a finding of animus, namely, that Williams had been disciplined differently because he had engaged in protected activity. *Wright Line,* 251 NLRB 1083 (1980). Instead, the General Counsel and the Board majority considered the case under the *Atlantic Steel* framework, looking first to whether Williams was engaged in protected activity and then evaluating whether his conduct was egregious enough to lose protection under the Act. *See Atl. Steel Co.*, 245 NLRB 814, 816 (1979) (laying out

factors to consider when evaluating whether an action otherwise protected under the Act is egregious enough to lose protection).

Second, there is substantial evidence that Constellium disciplined Williams because of the content of his message. When it suspended him, the Company's stated reason was for his "willfully and deliberately engaging in insulting and harassing conduct on the job," which, as the Board noted, refers to the content of his message. Indeed, in its brief, Constellium says it "took aggressive action" based upon not only "*how* [] Williams displayed the message" but also because of "*what* he wrote on Company property (a vulgar phrase 'Whore Board')." Given those admissions, the Board's conclusion that the Company disciplined Williams based upon the content of his message was well-supported. Therefore, the Company cannot show the Board lacked substantial evidence.

## C. Conflict with equal employment opportunity laws

Finally, Constellium argues the Board ignored the Company's obligations under federal and state anti-discrimination laws to maintain a harassment-free workplace. *See Can-Am Plumbing, Inc. v. NLRB*, 321 F.3d 145, 153–54 (D.C. Cir. 2003) (explaining that "where the policies of the Act conflict with another federal statute, the Board cannot ignore the other statute"); *see also Consol. Commc'ns, Inc. v. NLRB,* 837 F.3d 1, 20–24 (D.C. Cir. 2016) (Millett, J., concurring). The Board does not answer this contention but instead claims the court lacks jurisdiction to consider it because the Company forfeited the argument by failing to raise it before the Board. Section 10(e) of the NLRA indeed states the court shall not, except in "extraordinary circumstances," consider an objection that has "not been urged before the Board." 29 U.S.C. § 160(e).

Whether an objection was preserved for consideration by the court depends upon "whether the objections made before the Board were adequate to put the Board on notice that the issue might be pursued on appeal." *Consol. Freightways v. NLRB*, 669 F.2d 790, 794 (D.C. Cir. 1981); *see also Camelot Terrace, Inc. v. NLRB*, 824 F.3d 1085, 1090 (D.C. Cir. 2016). In this case the petitioner's objections were adequate.

In its Answering Brief in Response to the General Counsel's Exceptions to the Decision of the ALJ, the Company raised the potential conflict with equal employment opportunity laws in four places. First, the Company described its experience with workplace harassment issues, including a recent state court case resulting in a $1 million jury verdict against the Company for creating a hostile work environment for two female employees. Second, the Company argued that protecting Williams's "whore board" writing under the NLRA "would eliminate the Company's ability to police the workplace and remove similar foul messages in the future." Third, Constellium argued that, if the Board applied the totality of the circumstances test to determine whether Williams's conduct should lose protection under the NLRA, then the conduct should not receive protection in part because it was in conflict with the Company's "clear anti-harassment rule," which it had "reaffirmed" in the wake of the $1 million judgment against it. Fourth, the Company argued that if the Board applied the four-factor *Atlantic Steel* test instead of the totality of the circumstances test, then the nature of Mr. Williams's conduct, particularly his use of the word "whore," "was exactly the type of language … that a jury in West Virginia State Court found created a hostile and abusive work environment" at Constellium's plant. *See also Atl. Steel Co.*, 245 NLRB at 816 (laying out a four-part test to determine whether an employee's action was so egregious as to lose the protection of the Act). Williams's conduct was also, the

Company argued, "outside the bounds of what is acceptable … given the anti-harassment policies and laws." Although the Board's opinion acknowledged Williams's words were "harsh and arguably vulgar," the Board did not so much as advert to the potential conflict it was arguably creating between the NLRA and state and federal equal employment opportunity laws.

Constellium raised this issue again when it moved for reconsideration of the Board's decision, arguing in part that the decision would make the Company liable under equal employment opportunity laws. The Board nonetheless denied reconsideration without considering the issue, Member Emanuel even stating separately that Constellium's motion "has not raised any issue not previously considered."

The arguments advanced by Constellium in its Answering Brief and reprised in its motion for reconsideration were "sufficiently specific to apprise the Board that the issue might be pursued on appeal." *Consol. Freightways*, 669 F.2d at 793 (cleaned up). As the Board offers the court no argument on the merits of this point, we have no choice but to remand the matter for the agency to address the issue in the first instance.

### III. Conclusion

For the foregoing reasons, we grant Constellium's petition for review, deny the Board's cross-application for enforcement, and remand the case to the Board for proceedings consistent with this opinion.

*So ordered.*