**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1642

MASHUDA CORPORATION,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent.

No. 04-1758

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

MASHUDA CORPORATION,

Respondent.

On Petition for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board. (6-CA-33414)

Argued: February 1, 2005       Decided: April 20, 2005

Before WILKINS, Chief Judge, NIEMEYER, Circuit Judge, and Samuel G.
WILSON, United States District Judge for the Western District of
Virginia, sitting by designation.

Petition for review and cross-application for enforcement granted in part and denied in part by unpublished opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Wilkins and Judge Wilson joined.

**ARGUED:** Jane Lewis Volk, THE VOLK LAW FIRM, Sewickley, Pennsylvania, for Mashuda Corporation. Jason Walta, NATIONAL LABOR RELATIONS BOARD, Office of the General Counsel, Washington, D.C., for the Board. **ON BRIEF:** Charles R. Volk, Sewickley, Pennsylvania, for Mashuda Corporation. Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Fred B. Jacob, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

NIEMEYER, Circuit Judge:

Mashuda Corporation, a highway construction company, filed this petition for review of an order of the National Labor Relations Board ("NLRB" or the "Board") adopting an administrative law judge's findings that Mashuda Corporation violated §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("NLRA" or the "Act"), when it declined to hire Gary Singer as a mechanic for its road-widening project in Follansbee, West Virginia. The NLRB filed a cross-application for enforcement of its order.

Ralph Mashuda, Mashuda Corporation's owner and president, had explained to Singer that one of the company's reasons for not hiring him was that "maybe you [were] too union for us." On the basis of this comment and the surrounding circumstances, Singer filed a complaint with the NLRB. Following a hearing, the administrative law judge ("ALJ") concluded that Mashuda Corporation had coerced employees in the exercise of their self-organization rights in violation of § 8(a)(1) of the NLRA and that anti-union animus had contributed to Mashuda Corporation's decision not to hire Singer in violation of §§ 8(a)(3) and 8(a)(1) of the Act. Among other remedies, the ALJ recommended that Mashuda Corporation be ordered to hire Singer and to remit backpay to him.

We conclude that we have no jurisdiction to consider the independent § 8(a)(1) coercion violation and that substantial evidence supports the §§ 8(a)(3) and 8(a)(1) failure-to-hire

-3-

violation. Accordingly, we deny Mashuda Corporation's petition for review and grant the NLRB's cross-application for enforcement of its order finding violations of the Act. Because Singer's entitlement to backpay, however, should have been "tolled" by his refusal to consider an alternative mechanic position with Mashuda Corporation, we grant the company's petition for review and deny the Board's cross-application for enforcement as to that portion of the remedy.

I

Complainant Gary Singer is a mechanic and a member of the International Union of Operating Engineers, Local 132, AFL-CIO. Local 132 covers West Virginia and operates a "hiring hall" to which contractors such as Mashuda Corporation can turn for qualified workers. When a contractor needs to staff a job located within Local 132's jurisdiction, it calls Local 132 and states the skills required for the job. Local 132 then sends to the job the first person on its list who meets the skill requirements. Over the years, Mashuda Corporation, which is headquartered in western Pennsylvania, has been involved in a number of highway construction projects in West Virginia. And on three such projects, it employed Singer pursuant to referrals by Local 132. In 1982, Singer served on a Mashuda Corporation job as a drill operator, and in 1985 and 1990, as a master mechanic.

-4-

During Singer's 1990 engagement with Mashuda Corporation, two conflicts developed between him and his Mashuda supervisors. First, toward the end of the project, Mashuda Corporation equipment foreman Ronald Huffman attempted to lay off Singer while retaining Dennis Drummond, a "company" mechanic who traveled with Mashuda Corporation from project to project. Singer, however, claimed a right to his continued employment on the basis of Mashuda Corporation's contract with the union, which required that since the project was taking place in Local 132's jurisdiction, Singer had priority over Drummond, who was a member of Local 66 in Pennsylvania. The union intervened on Singer's behalf; Drummond was transferred to another job site; and Singer was retained until termination of the project. The second conflict involved the operation of a steam "jenny," which had been brought to the job site in order to steam clean construction equipment and which foreman Huffman had directed a laborer to operate. Singer advised Huffman that, under Mashuda Corporation's contract with Local 132, operators (such as mechanics) -- and not laborers -- were to run steam jennies. In response to Singer's protest, Huffman had Singer replace the laborer as the steam jenny operator.

In connection with the staffing of a project involving the widening of West Virginia Route 2 in Follansbee in February 2003, Mashuda Corporation representatives met with Local 132 union members, including business agent Mike O'Hara, to express the need

for mechanics for the project.  After O'Hara stated that Singer was first on their referral list, Mashuda Corporation sent O'Hara a letter advising O'Hara that it did not want Singer on the project.  The company's general manager, Robert Mellon, wrote, "Due to past performance and personality conflicts with other mechanics and employees[,] we are requesting at this time not to have Mr. Singer sent to our project."

Shortly thereafter, Singer contacted O'Hara to inquire about working on the Mashuda project, and O'Hara told him of the Mashuda Corporation letter.  Singer then telephoned Ralph Mashuda to discuss the situation, and the two met alone in a parking lot at the project site.  According to Singer, whose testimony the ALJ credited in making his findings of fact in this case, the following exchange took place.

> Singer asked Mashuda why he did not want Singer for the job.  Mashuda said his people said Singer was a pain in the neck.  Singer said he did not understand and asked who made this accusation.  Mashuda said, "maybe you just PO'd somebody real good."  Singer asked how, and Mashuda replied you bad mouthed [Mashuda Corporation]. . . . Mashuda said it was not a problem with Singer's ability to do the job and there was no problem with his truck, it was just a personality conflict.  Singer told Mashuda he did not understand the personality conflict assertion because he was not aware that he had any problems with anyone.  Singer asked who the problem was with, but all Mashuda would say was it was his people.  Mashuda then said, "maybe you was too union for us."  Mashuda went on to state you are a union man.  Singer replied he was and was proud of it.  Mashuda told Singer that Mashuda wanted mechanic Andy Potter on the job because Potter was well versed in repairing [Mashuda Corporation's] 90's scrapers, which are dirt moving machines.  Mashuda said he would talk to some more people and get back to Singer.

-6-

> Mashuda said in a couple of weeks he would be starting a
> night shift. Singer cut him off, and said "if Gary
> Singer is not good enough to work for you on day shift,
> he sure is not good enough to work night shift for you."

(Footnotes omitted). Ralph Mashuda later telephoned Singer and indicated that although he had not had a chance to discuss Singer's performance further with any other individuals, he would be sticking with his decision not to hire Singer for the project.

Singer filed a complaint against Mashuda Corporation with the NLRB, and on July 21, 2003, the NLRB issued a formal complaint against Mashuda Corporation, alleging that the company "has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed by Section 7 of the [National Labor Relations] Act in violation of Section 8(a)(1) of the Act," and "has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the [National Labor Relations] Act." The complaint was heard before an ALJ on October 1, 2003, and Singer testified to the events as related above by the ALJ.

In response, Ralph Mashuda testified that the Mashuda Corporation letter to O'Hara was based on his discussions with his equipment foreman, Ronald Huffman, regarding Huffman's prior experience with Singer. According to Mashuda, Huffman found Singer to be lazy and a difficult individual with whom to work. Mashuda recounted an episode involving some work on a 50-ton truck, during

-7-

which Singer sat in a pickup truck and watched because it was raining, and a somewhat different version of the steam jenny incident. Ralph Mashuda testified that Huffman attempted to have an operator run the steam jenny, but that the operators declined because it was dirty work. Later, only after an operator was going to be laid off did Singer allegedly protest, resulting in the laying off of the laborer and the placement of an operator on the steam jenny. Ralph Mashuda also testified that Paul Owens, Mashuda Corporation's master mechanic on the Follansbee project, told Mashuda that he would not work with Singer because, on a prior job, Owens had ended up having to do the work that should have been performed by Singer. Finally, Ralph Mashuda testified that Charlie Hinkle, a supervisor for a Mashuda Corporation competitor, had told him that the company was unlikely to get much work out of Singer.

Huffman and Owens testified on their own about these events, but their testimony was significantly less detailed. Owens testified that he told Ralph Mashuda that he would not work with Singer because Singer was lazy, although he admitted on cross examination that he had never actually worked directly with Singer. Huffman testified simply that Singer did not work hard and did not like to work in the rain.

The ALJ credited Singer's testimony, finding Huffman entirely unbelievable and Owens' testimony contradictory. The ALJ determined that Ralph Mashuda's remark to Singer in partial

explanation of why Singer was not being hired -- that maybe he was "too union for us" -- was coercive and violated § 8(a)(1) of the NLRA. In addition, the ALJ found that Singer was qualified for the mechanic position and that anti-union animus stemming from Singer's actions to enforce the union contract during the 1990 job contributed to Ralph Mashuda's decision not to hire him. The ALJ also found that the performance-related reasons given by Mashuda Corporation for not hiring Singer were pretextual. Finally, the ALJ concluded that Ralph Mashuda's discussion with Singer about the night shift position was not "a bona fide job offer to Singer" and that "Mashuda never made a firm offer . . . for such a position."

With these findings, the ALJ held that Mashuda Corporation engaged in unfair labor practices within the meaning of §§ 8(a)(1) and 8(a)(3) of the Act and recommended that Mashuda Corporation be ordered to offer Singer the day-shift mechanic position for which he had applied and to make him whole for any losses he had suffered. Mashuda Corporation filed exceptions, and on April 30, 2004, the Board issued a decision and order affirming the ALJ's "rulings, findings, and conclusions." The Board also adopted the ALJ's recommended order with a slight modification. Mashuda Corporation filed this petition for review, and the Board filed a cross-application for enforcement of its order.

In its petition, Mashuda Corporation contends that the Board erred in finding anti-union animus by failing to consider the

context surrounding Ralph Mashuda's "too union" comment, the company's long-standing relationship with the unions, and the company's non-union-related objections to employing Singer. In addition, the company contends that even if a prima facie case had been made against Mashuda Corporation, the company "sustained its burden to prove that the same action would have been taken even absent the allegedly discriminatory motive." Finally, Mashuda Corporation argues that backpay should not have been awarded to Singer in light of its offer of night-shift employment.

In its cross-application for enforcement, the Board contends that its decision and order is supported by substantial evidence and that Mashuda Corporation waived any objection to the independent § 8(a)(1) violation because it failed to present the issue to the Board. The Board also maintains that its backpay order was justified because Mashuda's night-shift offer was insufficiently clear to toll backpay under the Board's established mitigation doctrine.

II

We address first the Board's contention that we lack jurisdiction to review the independent § 8(a)(1) violation stemming from Ralph Mashuda's "too union" comment because Mashuda Corporation did not preserve the point.

Section 8(a)(1) makes it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of"

-10-

their self-organization rights. 29 U.S.C. § 158(a)(1). The Board may find an independent § 8(a)(1) violation, and any § 8(a)(3) violation that it finds arising from a failure to hire also necessarily includes a derivative violation of § 8(a)(1). See Metro. Edison Co. v. NLRB, 460 U.S. 693, 698 n.4 (1983) (explaining the relationship between § 8(a)(1) and § 8(a)(3)).

In its exceptions taken from the ALJ's findings and recommendations, Mashuda Corporation addressed only the failure-to-hire violation, and it preserved no challenge to the ALJ's independent finding that the "too-union" remark itself violated § 8(a)(1). Because Mashuda Corporation did not preserve this issue before the Board, it cannot present it to us now. We agree with the Board that on that basis we have no jurisdiction to review the violation. See 29 U.S.C. § 160(e) (noting that the court has no jurisdiction to consider objections not urged before the NLRB, absent "extraordinary circumstances"); see also Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982). Mashuda Corporation's conclusory assertions that it "filed exceptions to the [ALJ's] entire decision" and that it "is not relinquishing its appeal from the 8(a)(1) portion of the Order" are unsupported by the record and unavailing, given the requirements of the Act. Indeed, it is telling that Mashuda Corporation's argument challenging this violation is confined to a solitary footnote in its opening brief.

-11-

Mashuda Corporation's petition for review of this portion of the Board's order is accordingly dismissed, and the Board's cross-application for enforcement is granted.

III

We now turn to Mashuda Corporation's principal argument that the Board erred in concluding that anti-union animus contributed to its decision not to hire Singer, and that Mashuda Corporation thus violated NLRA § 8(a)(3) and derivatively § 8(a)(1). Section 8(a)(3) makes it unlawful for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). We enforce the Board's order with respect to violations such as these if, looking at the entirety of the record, the Board's factual findings are supported by substantial evidence. 29 U.S.C. § 160(e); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

The analysis for determining a § 8(a)(3) violation was initially set out in NLRB v. Wright Line, Inc., 662 F.2d 899 (1st Cir. 1981), and has since been adopted and restated by us. See, e.g., USF Red Star, Inc. v. NLRB, 230 F.3d 102, 106 (4th Cir. 2000); FPC Holdings v. NLRB, 64 F.3d 935, 942 (4th Cir. 1995). It is a two-step, burden-shifting analysis under which we determine first whether the General Counsel proved a prima facie case that the employer's decision not to hire an employee was motivated by

-12-

anti-union animus.  See FPC Holdings, 64 F.3d at 942.  To prove a prima facie case, "the General Counsel must show (1) that the employee was engaged in protected activity, (2) that the employer was aware of the activity, and (3) that the activity was a substantial or motivating reason for the employer's action."  Id. If the General Counsel has carried his burden, we move to the second step, under which we determine whether the employer has carried its burden of proving that the same action would have been taken even in the absence of the employee's union activity.  Id.

Mashuda Corporation contends first that there was insufficient evidence that Singer's 1990 pro-union activity was a motivating reason behind Mashuda's decision not to hire him. "Motive may be demonstrated by circumstantial as well as direct evidence and is a factual issue 'which the expertise of the Board is peculiarly suited to determine.'"  FPC Holdings, 64 F.3d at 942 (citations omitted) (quoting Perel v. NLRB, 373 F.2d 736, 737 (4th Cir. 1967)).  When these "factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'"  Fieldcrest Cannon, Inc. v. NLRB, 97 F.3d 65, 69 (4th Cir. 1996) (quoting NLRB v. Air Products & Chemicals, Inc., 717 F.2d 141, 145 (4th Cir. 1983)).

In this case, the issue does come down to a question of witness credibility, and accordingly our review is highly deferential.  Applying the standard of review, we can find no

"exceptional circumstances" that compel us to reject the ALJ's credibility determinations. Singer testified to two union-related conflicts that he had in 1990 and to Ralph Mashuda's observation in 2003 that Singer might be "too union" for Mashuda Corporation. Of course, Mashuda Corporation disputes this testimony, contending instead that Ralph Mashuda's decision not to hire Singer was motivated by negative reports on Singer's work ethic. Ralph Mashuda testified to conversations he had about Singer with Ronald Huffman, Greg Demistratus, Mike O'Hara, Charlie Hinkle, and Paul Owens. Of this group, however, only Huffman and Owens testified before the ALJ, and neither testified as fully about the conversations as did Ralph Mashuda. For example, Owens testified that Singer was lazy and that he told Mashuda he would not work with him. But Owens admitted that he had never worked with Singer directly and that his opinion was based on what he himself had only heard from others. When Owens was asked directly about his experience with Singer, he only replied that he would "hear a lot of stuff," that Singer would be "[s]itting in his truck, wouldn't report to the master mechanic for other stuff to do." This testimony compares with Ralph Mashuda's testimony recounting a conversation in which Owens stated that he had had to do Singer's work. Similarly, Ralph Mashuda testified that Huffman told him about the steam jenny incident and about Singer's sitting in a truck watching others repair a 50-ton truck in the rain. Huffman,

however, testified in only very general terms about Singer's work ethic and mentioned something about Singer's not liking the rain. Huffman never mentioned the steam jenny incident, and the record reveals that his testimony in general was somewhat agitated.

Singer's testimony, if credited, provides support for the motivation prong under the Wright Line test, especially because anti-union animus need only be a contributing factor and is sufficient for a prima facie case even if "combined with other legitimate nondiscriminatory motives." Ultrasystems Western Constructors, Inc. v. NLRB, 18 F.3d 251, 257 (4th Cir. 1994).

Second, Mashuda Corporation contends that even if a prima facie case was proved, it sustained its burden of proving that it would not have hired Singer anyway because of his work ethic. But the evidence that would substantiate Ralph Mashuda's claim that he heard Singer was lazy is the same discredited evidence that was used in an attempt to rebut a prima facie case of anti-union animus. Moreover, under this second prong of the Wright Line test, Mashuda has the shifted burden of proof. See FPC Holdings, 64 F.3d at 942.

Given the ALJ's credibility determinations and the unexceptional circumstances of this case, we conclude that the Board's findings are supported by substantial evidence. Accordingly, we deny Mashuda Corporation's petition to review the

§§ 8(a)(3) and 8(a)(1) violations and grant the Board's cross-application for enforcement with respect to these violations.

IV

Finally, Mashuda Corporation challenges the Board's order awarding Singer backpay on the basis of the conversation between Ralph Mashuda and Singer in which Singer essentially rejected the possibility of accepting an offer for night employment. As found by the ALJ, the exchange took place as follows:

> Mashuda said in a couple of weeks he would be starting a night shift. Singer cut him off, and said "if Gary Singer is not good enough to work for you on day shift, he sure is not good enough to work night shift for you."

The Board concluded that because Mashuda Corporation did not make a valid offer of employment for the night shift, it could not toll Singer's entitlement to backpay.

The general rule is that an individual's entitlement to backpay is tolled if he fails to mitigate damages. See NLRB v. Pepsi Cola Bottling Co. of Fayetteville, 258 F.3d 305, 310 (4th Cir. 2001). Accordingly, "[a]n employer's offer of reinstatement," or, in this case, of employment, "tolls the accrual of backpay," Halle Enterprises v. NLRB, 247 F.3d 268, 271 (D.C. Cir. 2001), because it creates an opportunity for the employee to mitigate damages. Such an offer of employment is only effective, however, if it is "firm, clear, and unconditional." Id. (quoting Consol.

<u>Freightways v. NLRB</u>, 892 F.2d 1052, 1056 (D.C. Cir. 1989)) (internal quotation marks omitted).

In this case the Board correctly noted that Mashuda Corporation did not demonstrate that it had firmly, clearly, and unconditionally offered Singer a job on the night shift. But the Board ignored the fact that the reason for this failure was Singer's preemption of such an offer. By telling Ralph Mashuda that he would not consider a night shift job when Mashuda raised the subject, Singer must now be estopped from asserting the insufficiency of Mashuda's offer as a basis to excuse his failure to mitigate.

This is not the case where an employer has extended a conditional or hypothetical offer and attempted to use an employee's rejection of that offer as evidence of a failure to mitigate. A number of circuits have held that such a situation does not result in the tolling of an entitlement to backpay. <u>See, e.g.,</u> <u>Consol. Freightways</u>, 892 F.2d at 1056 (noting that it is "incumbent on the [employer] to extend to the injured employee a facially valid offer of reinstatement before the burden shifts to the injured employee to accept or reject the offer" (citation and internal quotation marks omitted)); <u>NLRB v. Seligman & Assoc.</u>, 808 F.2d 1155, 1163 (6th Cir. 1986) (noting that "an employee is under no obligation to decide whether to accept reinstatement until an unconditional offer of reinstatement is made"). Instead, in this

-17-

case Singer cut Ralph Mashuda off and precluded his extending any offer of employment -- conditional, hypothetical, or bona fide -- and the only evidence received was that Ralph Mashuda was prepared to extend a valid offer.

Although it was unnecessary to his conclusion, the ALJ also concluded that the day shift mechanic position was a "higher profile job" than the night shift position and that it was not "incumbent on Singer, after being told that he was 'too union' for [Mashuda], to be required to accept a less favorable shift and a position of less stature as a result of his union activities." Such a conclusion, however, is not supported by the record, and Singer testified before the ALJ that the night shift position paid the same as the day shift. Moreover, the Board explicitly declined to address this finding.

Accordingly, we conclude that Singer's preemptive statement renouncing any interest in a night shift position with Mashuda Corporation tolled his entitlement to backpay. While Mashuda Corporation did not make a bona fide offer of employment, it need not have done so in the face of Singer's unambiguous anticipatory rejection of any such offer. Therefore, with respect to this portion of the Board's order, we grant Mashuda Corporation's petition for review and deny the Board's cross-application for enforcement.

V

In sum, we dismiss Mashuda Corporation's petition for review of the independent § 8(a)(1) violation based on the "too-union" comment; we deny its petition for review of the Board's findings that it violated §§ 8(a)(3) and 8(a)(1) in declining to hire Singer; we grant Mashuda Corporation's petition for review with respect to the Board's award of backpay to Singer; and we grant the Board's cross-application for enforcement of its order in its entirety, with the exception of its order awarding Singer backpay.

<u>IT IS SO ORDERED</u>.